UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 16-61768-CIV-ALTONAGA/O'Sullivan

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

    Plaintiff/Counter-Defendant,

v.

DOUGLAS BARKLEY, individually
and for the use and benefit of Certain
Underwriters at Lloyd's, Syndicate
4420, Ark Underwriting, Inc., as
assignee of his transfer of interest

    Defendant/Counter-Plaintiff.
_____/

## TRAVELERS' MOTION FOR SUMMARY JUDGMENT

Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, respectfully moves for summary judgment and the Court's declaration that there is no coverage available to Defendant/Counter-Plaintiff DOUGLAS BARKLEY, individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4420, Ark Underwriting, Inc., as assignee of his transfer of interest ("Barkley/Lloyd's") under Travelers' commercial marine policy of insurance number SY00002292 for the period of November 11, 2013 through November 11, 2014 (the "Travelers' Policy") for the drowning death of Joseph Grosso ("Grosso") in a scuba diving accident on or about July 30, 2014, as alleged in a wrongful death action filed in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida styled as *Glenn J. Grosso and Dineen M. Franchina, as Personal Representatives of the Estate of Joseph P. Grosso, v. Salt 'N Blue, LLC, Robert W. Wranovics, Jr., and Douglas Barkley,* bearing Case Number: 16-003923(05) (the "Underlying Litigation").



## PROCEDURAL POSTURE OF THE CASE

This declaratory judgment action involves the legal interpretation of a contract of marine insurance. On a tragic diving excursion on July 30, 2014, Joseph Grosso died while in the water off of Pompano Beach, Florida. His personal representatives, Glenn J. Grosso and Dineen M. Franchina filed the Underlying Litigation against Salt 'N Blue, LLC, as well as Captain Robert Wranovics and Douglas Barkley on or about March 1, 2016 in Broward County Circuit Court. The Underlying Litigation was settled as between the Personal Representatives and the Defendants in or around October 2017, via two separate settlements (one funded by Lloyd's and one funded by Travelers) and two separate releases.

Travelers filed its Complaint in this action on or about July 22, 2016 against Defendants Salt 'N Blue LLC, Robert Wranovics, and Douglas Barkley. [D.E. 1]. Travelers subsequently filed an Amended Complaint on or about October 12, 2016 against Salt 'N Blue LLC, Robert Wranovics, and Douglas Barkley as well as against newly added Defendants Glenn J. Grosso and Dineen M. Franchina, as Personal Representatives of Grosso's Estate ("Personal Representatives"). [D.E. 19]. Following settlement of the Underlying Litigation, on or about February 13, 2017, Defendants Salt 'n Blue, Robert Wranovics, and the Personal Representatives were dropped as parties to this action. [D.E. 69]. Thereafter, the case proceeded between Travelers and Barkley/Lloyds. *Id.* Mediation is scheduled for June 19, 2017. [D.E. 83].

## TWO COMPLEMENTARY POLICIES OF INSURANCE

In evaluating this motion, it may be helpful to bear in mind that this case involves two complementary policies of insurance. For example, while the Traveler's Policy provides coverage for bodily injury and death as a result of the ownership, operation, or maintenance of the insured vessel, the Lloyd's Policy expressly excludes bodily injury arising from the ownership, operation, or maintenance of a vessel from coverage. Conversely, the Travelers' Policy contains a plain and unambiguous in-water exclusion whereby bodily injury or loss of life of any person while in the water or arising as a consequence of being in the water is expressly excluded from coverage, while the Lloyd's policy expressly provides coverage for in-water injuries.

## SYNOPSIS OF LEGAL ARGUMENT

Plaintiff set forth a synopsis of the background facts regarding the July 30, 2014 scuba diving trip aboard the *M/V Scubatyme III,* which was owned by Salt 'N Blue, LLC and operated by Robert Wranovics. *See* Amended Complaint, D.E. 19, at ¶¶6 – 8, 12 – 19. Defendant Barkley/Lloyd's admits most of the background facts described by Travelers. [D.E. 48] Notwithstanding, the few allegations that Defendant does not admit are not material issues of fact. To be sure, the undisputed fact that Mr. Grosso died in the water, as set forth in the Statement of Undisputed Material Facts, is material and important factually for this insurance coverage determination.

The diving incident which forms the basis of the Underlying Litigation did not occur as a result of the ownership, operation, or maintenance of the Insured Vessel under the Travelers' Policy. Moreover, the Travelers' Policy contains an exclusion which expressly states that there is no coverage for "[b]odily injury, loss of life, or illness of any person while in the water or arising as a consequence of being in the water." *See* Diveboat Limitation Endorsement, D.E. 19-2, pg. 21.[1] Therefore, there is no genuine issue as to any materials fact, and as a matter of law, there is no coverage under the Travelers' Policy for the incident which forms the basis of the Underlying Litigation.

Travelers now respectfully seeks a declaratory judgment that there is no coverage available to Defendant Barkley/Lloyd's under the Travelers' Policy and, further, that as a consequence of the exclusion and absence of coverage, Plaintiff is not and was not obligated to provide a defense to Barkley/Lloyd's in the Underlying Litigation based on the contract of insurance between Travelers and Salt 'N Blue, LLC. Further, because there was coverage for Salt 'N Blue, LLC under the Lloyd's Policy, Defendant Barkley /Lloyd's should reimburse Travelers for fees and costs incurred in Travelers' defense of Salt 'N Blue, LLC.

---

[1] Throughout this motion, Travelers' refers to page numbers on various documents. Some of the referenced documents contain their own page-numbering scheme. For example, some pages of the Travelers' Policy are internally numbered while other pages, such as the endorsements, do not continue the numbering scheme. Therefore, with the exception of depositions, whenever Travelers refers to a page number in an exhibit hereto, Travelers is referring to the page number that will be stamped by the Clerk on the top of each page and not to any page numbering scheme on the original documents.

## STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(A)

### Background Facts

1. On July 30, 2014, the *M/V Scubatyme III*, Hull ID No.: NWN36147D398 (the " Insured Vessel") was used to transport passengers to a dive location off of Pompano Beach, Florida. [D.E. 19, ¶12; D.E. 48, ¶12 (admitted)]. The Insured Vessel was being operated by Robert W. Wranovics (the "Captain") and Douglas Barkley, a mate/deckhand. *Id.*

2. On July 30, 2014, Grosso and his brother signed a liability release and boarded the Insured Vessel. [D.E. 19, ¶15; D.E. 48, ¶15 (admitted)]. The Insured Vessel subsequently departed the dock and motored north toward a dive site. [D.E. 19, ¶16; D.E. 48, ¶16 (admitted)].

3. Grosso and his brother entered the water to go diving. After the dive, they both returned to the Insured Vessel. *See* Deposition of Douglas Barkley in the Underlying Litigation, 40:7-10, attached hereto as Exhibit 1 (sensitive/confidential information may have been redacted).[2]

4. Thereafter, Grosso's brother exited the water and boarded the Insured Vessel. *Id.* at 42:8-44:4.

5. Grosso remained in the water. *Id.* Grosso indicated to Mr. Barkley that he wanted to go back down underwater to retrieve a dive flag and a lobster. *Id.*

6. The Insured Vessel motored away from Grosso's location to pick up other emerging divers and then returned to Grosso's location in the water. [D.E. 19, ¶18; D.E. 48, ¶18 (admitted)].

7. Upon returning, Grosso was found without his regulator and unresponsive under approximately fifteen feet of water tangled in the dive flag line. [D.E. 19, ¶19; D.E. 48, ¶19 (admitted)]. Resuscitation efforts were unsuccessful. *Id.*

### The Underlying Litigation

8. On or about March 1, 2016, Grosso's Personal Representatives filed the Underlying Litigation, a wrongful death action in Broward Circuit Court, against Salt 'N Blue, LLC, Robert Wranovics, and Douglas Barkley. [D.E. 19, ¶20; D.E. 48, ¶20 (admitted)]. *See also* D.E. 19-1.

9. The Underlying Litigation alleges that Douglas Barkley "was a mate and a dive master in charge of the diving operations of the Salt 'N Blue, LLC…" [D.E. 19-1, ¶13].

---

[2] Unless expressly referenced, exhibits to attached depositions are generally not being attached hereto. However, complete sets of exhibits from the depositions will be provided to the Court upon request.

10. The Underlying Litigation alleges that Grosso "had become entwined in the line of the buoy… approximately 15 feet below the surface of water, without air, with his mouth guard floating in the water and drowned." [D.E. 19-1, ¶28].

11. The Underlying Litigation alleges, *inter alia*, that Douglas Barkley and Salt 'N Blue, LLC owed Grosso a duty of care and breached that duty by:

   a. Allowing Grosso to dive without a 'dive buddy' [D.E. 19-1, ¶76(a)];

   b. By operation of the vessel in abandoning the dive site and leaving Grosso in the water [D.E. 19-1, ¶76(b)];

   c. Giving Grosso permission to re-submerge alone in 35-40 feet of water when it knew or should have known Grosso had an inadequate amount of air to re-submerge and continue safely without a dive buddy [D.E. 19-1, ¶76(c)];

   d. Failing to keep a look out to be able to observe Grosso in the event he needed rescue or help while he was alone without help for an unreasonable amount of time [D.E. 19-1, ¶76(d)]

   e. Violating a federal criminal statute, 18 U.S.C. § 1115 [D.E. 19-1, ¶76(e) (paraphrasing)[3]];

   f. Failing to properly supervise a plan and execute a dive trip [D.E. 19-1, ¶76(f)];

   g. Having an inadequately trained crew on board [D.E. 19-1, ¶76(g)];

   h. Having an insufficient amount of crew members on board [D.E. 19-1, ¶76(h)]; and

   i. Having an inadequately equipped or maintained vessel [D.E. 19-1, ¶76(i)].

12. The Underlying Litigation was served on Salt 'N Blue on or about March 16, 2017.

---

[3] The statute, 18 U.S.C. § 1115, states:

   Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

   When the owner or charterer of any steamboat or vessel is a corporation, any executive officer of such corporation, for the time being actually charged with the control and management of the operation, equipment, or navigation of such steamboat or vessel, who has knowingly and willfully caused or allowed such fraud, neglect, connivance, misconduct, or violation of law, by which the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

13. The Underlying Litigation was served on Douglas Barkley on or about March 18, 2016. *See* Deposition of David Pope, 90:14-19, 91:9-11. Pertinent portions of Mr. Pope's deposition are attached hereto as Exhibit 2 (confidential and/or sensitive information may have been redacted).

14. On or about March 31, 2016 attorney James Hurley was retained by Gibson and Associates, a third party administrator for LLOYD'S to represent and defend Douglas Barkley in the Underlying Litigation. Deposition of James Hurley, 31:23 – 32:11. Pertinent portions of Mr. Hurley's deposition are attached hereto as Exhibit 3 (confidential and/or sensitive information may have been redacted).

15. On or about September 26, 2016, Douglas Barkley, via his counsel Mr. Hurley, made a demand upon Travelers to defend and indemnify Mr. Barkley with regard to the Underlying Litigation. Ex. 3, Deposition of James Hurley, 63:6 – 64:4 and Exhibit 16 thereto.

16. On or about October 5, 2016, Travelers accepted the defense of Mr. Barkley subject to the same terms and conditions of the Travelers' Policy as Salt 'N Blue, LLC and Captain Wranovics as more fully outlined in Travelers' reservations of rights correspondence. Ex. 3, Deposition of James Hurley, 71:5-24 and Exhibit 18 thereto.

## **The Lloyd's Policy**

17. As a condition of his employment with Salt 'N Blue, LLC d/b/a Scubatyme Charters, Mr. Barkley was required to obtain Professional Liability insurance. *See* Deposition of Douglas Barkley in the instant Declaratory Action, 15:3-15, pertinent portions of Mr. Barkley's Deposition in the instant Declaratory Action ("Barkley's Deposition, Declaratory Action") are attached hereto as Exhibit 4 (confidential and/or sensitive information may have been redacted).

18. LLOYD's issued a "Professional Liability Insurance Master Policy" Number SA 0036-14582, which named Douglas Barkley as an Insured, pursuant to the "Professional Liability Evidence of Insurance" ("Lloyd's Policy"). [D.E. 48, ¶11; D.E. 59, ¶11 (admitted)]. A copy of the Lloyd's Policy is attached as Exhibit 5. *See also* D.E. 48-1 for a copy of the Lloyd's Policy.

19. Salt 'N Blue, LLC d/b/a Scubatyme Charters is an additional insured under the Lloyd's Policy. Ex. 4, Barkley's Deposition, Declaratory Action, 17:24 – 18:19. *See also* Ex. 5, Lloyd's Policy, pg. 24; Deposition of Defendant Barkley/Lloyd's Corporate Representative, B.J. Joplin.[4]

20. The Lloyd's Policy contains the following relevant coverage provisions:

    I.    COVERAGE – CLAIMS MADE

    a.    Subject to the Limit of Liability for **DAMAGES**, the Underwriters agree to pay on behalf of the **INSURED** all sums which the INSURED shall become legally obligated to pay as **DAMAGES** for **BODILY INJURY** and/or **PROPERTY DAMAGES** for **CLAIMS** arising from an **EVENT** caused by any negligent act, error or omission in the rendering of or failure to render **PROFESSIONAL SERVICES** by the **INSURED**.

Ex. 5, Lloyd's Policy, page 5 (emphasis in original)

21. The Lloyd's Policy Provides the following relevant definitions:

### ADDITIONAL DEFINITIONS

    I.    **ADDITIONAL INSUREDS** means, a retail dive business… , dive boat operators including owners or partners, and resorts, hotels, or motels, but solely for liability arising out of the alleged negligent acts, errors or omissions of an **INSURED** arising out of their supervision of, instruction in, and orientation to sanctioned aquatic activities which results in an **EVENT.** No additional insured coverage is conferred with respect to the independent negligent acts, errors or omissions of the additional insured. In no **event** shall the coverage afforded to the **ADDITIONAL INSUREDS** be broader than the coverage afforded to the **INSURED.**

    \*    \*    \*

    III.    **BODILY INJURY** means physical injury, mental anguish, sickness, disease, shock or disability sustained by a person, including death resulting from any of these at any time.

    IV.    **CLAIM(s)** means a written demand for **DAMAGES** received by an **INSURED.**

    \*    \*    \*

---

[4] Mr. Joplin was deposed as Defendant Barkley/Lloyd's 30(b)(6) Corporate Representative on May 24, 2017. As of the filing of this motion, Travelers has not yet received the transcript from Mr. Joplin's deposition. Notwithstanding, pertinent portions of Mr. Joplin's transcript will be filed in support of this Motion upon receipt of the transcript from the Court Reporter.

    VI.    **EVENT** means an accident that occurs while the **PARTICIPANT** is in the water, entering the water or preparing to enter the water, or exiting the water, while in connection with recreational underwater instruction or supervision, including SCUBA (Self-contained Underwater Breathing Apparatus) diving, **RSSA** (Recreational Surface Supplied Air) diving, Free Diving, snorkeling and swimming, or other activities listed under **PROFESSIONAL SERVICES. EVENT** also includes an accident or incident involving instruction or supervision of SCUBA, RSSA, Free Diving, snorkeling or swimming activities, including related first aid activities, whether occurring in a classroom, pool, or natural or artificial body of water.

    \*    \*    \*

    VIII.    **PARTICIPANT** means any person being instructed or supervised by an **INSURED** while providing **PROFESSIONAL SERVICES** and who (or a parent or legal guardian in the case of a minor on their behalf) has signed the requisite written release of liability/assumption of risk and medical history form.

    IX.    **PROFESSIONAL SERVICES** means:

    a. the instruction or supervision of sanctioned recreational swimming, snorkeling, skin diving, free diving, RSSA (Recreational Surface Supplied Air) diving, or SCUBA (Self-Contained Underwater Breathing Apparatus) diving provided by a properly qualified **INSURED** in his/her capacity as a certified swim or dive professional; and

    b. the training and supervision of students during the instruction of standard first aid, including but not limited to, first aid to injured humans.

Ex. 5, Lloyd's Policy, pgs. 6-7 (emphasis in original).

  22. The Lloyd's Policy contains the following relevant exclusions to coverage:

## EXCLUSIONS

Coverage is NOT afforded:

    \*    \*    \*

    VI.    for **BODILY INJURY** and/or **PROPERTY DAMAGE** arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile, aircraft or watercraft. This exclusion does not apply to the ingress and/or egress from any watercraft while any **PARTICIPANT** is under the **INSURED**'s supervision

> or instruction, or involving the operation of a kayak or paddleboard.

Ex. 5, Lloyd's Policy, pg. 8 (emphasis in original).

23. No reservations of rights letters were issued with regard to the Lloyd's Policy in relation to the accident of July 30, 2014 or allegations made in the Underlying Litigation. *See* Deposition of Defendant Barkley/Lloyd's Corporate Representative B.J. Joplin.[5]

24. The Lloyd's Policy provided coverage for Mr. Barkley for the Personal Representatives' claims alleged in the Underlying Litigation. *See* Deposition of Defendant Barkley/Lloyd's Corporate Representative B.J. Joplin.[6]

25. The Lloyd's Policy provided coverage for Salt 'N Blue, LLC d/b/a Scubatyme Charters, as an Additional Insured under the Lloyd's Policy, for the Personal Representatives' claims alleged in the Underlying Litigation. *See* Deposition of Defendant Barkley/Lloyd's Corporate Representative B.J. Joplin.[7]

26. Although the Lloyd's Policy provided Mr. Barkley with a defense and indemnification as a result of the accident of July 30, 2014 and/or the allegations made in the Underlying Litigation, Lloyd's did not provide Salt 'N Blue, LLC with a defense or indemnification. *See* Deposition of Defendant Barkley/Lloyd's Corporate Representative B.J. Joplin.[8]

## **The Travelers' Policy**

27. Plaintiff Travelers issued the commercial marine policy of insurance number SY00002292 for the period of November 11, 2013 through November 11, 2014 (the "Travelers' Policy"). A copy of the Travelers' Policy is attached hereto as Exhibit 6 (premium amounts have been redacted).

28. The Travelers' Policy was issued to Salt 'N Blue, LLC, as the Named Insured, at 401 Briny Ave., Apt. 304, Pompano Beach, FL 33026-5817. Ex. 6, Travelers' Policy, Policy Declarations Page, pg. 2.

29. The *M/V Scubatyme III*, Hull ID No.: NWN36147D398 is listed as the Insured Vessel under the Travelers' Policy. Ex. 6, Travelers' Policy, Policy Declarations Page, pg. 2.

30. The Travelers' Policy provides the following relevant definitions:

---

[5] *See* Note 4, *supra*.
[6] *See* Note 4, *supra*.
[7] *See* Note 4, *supra*.
[8] *See* Note 4, *supra*.

**"Who Is Insured by This Policy"**

a. "Named Insured" – with regard to a Commercial Venture, means the Named Insured as indicated on the Declarations Page. "Named Insured" with regard to Recreational Use, means the Named Insured as indicated on the Declarations Page and any family member within your household and any other person using the insured craft with your permission.

b. "Additional Named Insured(s)" – with regard to a Commercial Venture, means the Captain and designated crewmember(s).

\*   \*   \*

**Commercial Venture** means any time the insured vessel is used to carry passengers who have agreed to pay to be on the vessel. It includes any time the insured vessel is being operated by a captain or crewmember to prepare such a trip.

Ex. 6, pg. 6 (emphasis in original).[9]

31. The Travelers' Policy also contains the following relevant coverage provisions:

**PART B: LIABILITY COVERAGE**

**PERILS INSURED AGAINST**
We will pay sums that you or a covered person under this policy become legally obligated to pay as a result of the ownership, operation or maintenance of the insured vessel because of:

a. attempted or actual raising, removal or destruction of the wreck of your insured property;
b. failure to raise, remove or destroy the wreck of your insured property;
c. bodily injury or loss of life; and
d. loss or damage to any property.

Travelers' Policy, Ex. 6, p. 10 (emphasis in original). *See also* D.E. 19, ¶23; D.E. 48, ¶23 (admitted).

32. The same page of the Travelers' Policy contains the following relevant exclusions to coverage:

**EXCLUSIONS**
We do not provide coverage under PART B: LIABILITY COVERAGE for:
\*   \*   \*

---

[9] It is undisputed that the decedent, Grosso, was a paid passenger aboard the Insured Vessel. D.E. 19, ¶24; D.E. 48, ¶24 (admitted in part, denied "to the extent that the allegations contain an incomplete recitation of coverage").

    k.    loss of life, injury to, or illness of any person arising from swimming, snorkeling, or scuba diving or any person(s), while entering the water, exiting the water, or while in the water; however, this does not apply to an occurrence as the result of man overboard or emergency services to the vessel. In addition, this policy excludes all liability for loss of life, injury to or illness, and property damage, from or in connection with any sales, rental, lease, service or use of diving equipment of any kind;

    l.    any exclusion contained in Part G: **GENERAL CONDITIONS AND EXCLUSIONS**.

Ex. 6, Travelers' Policy, pg. 10 (emphasis in original).

    33.    The Travelers' Policy also contains a Diveboat Limitation Endorsement, which contains the following relevant language:

> This is your amended Coverage Data Page. It is understood and agreed that this policy is amended as follows:
>
> \*    \*    \*
>
> **PART B: LIABILITY COVERAGE – EXCLUSION K** is replaced with the following:
>
>> Bodily injury, <u>loss of life</u>, or illness <u>of any person while in the water or arising as a consequence of being in the water</u>. In addition this policy excludes all liability for bodily injury, loss of life, illness, and property damage, from or in connection with any sales, rental, lease, service of use of diving equipment of any kind.
>
> \*    \*    \*
>
> The following clause is added to the **PART G: GENERAL CONDITIONS AND EXCLUSIONS** section of the policy:
>
>> It is hereby warranted that:
>>
>> 1. All Passengers engaged in Snorkeling and Diving activities shall be required to complete and sign an approved Snorkeling or Diving specific Voluntary Release, Waiver and Assumption of Risk Agreement prior to engaging in any Snorkeling or Diving Activities…
>>
>> 2. You will ensure the Dive Instructor and/or Divemaster supervising passengers in the water will have Professional Liability Insurance which names you and the vessel as an additional insured.

Ex. 6, Travelers' Policy, Diveboat Limitation Endorsement, pg. 21 (bold emphasis in original, underlining emphasis added).

34. The foregoing language was a part of the Travelers' Policy in place for the coverage period November 11, 2013 to November 11, 2014, and is therefore applicable to the insurance coverage available as it pertains to Mr. Grosso's death on July 30, 2014.

## MEMORANDUM OF LAW

### I.  Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it could affect the outcome of a suit under the governing law. *Id*. The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Scottsdale Ins. Co. v. GIM Operations*, 789 F.Supp. 2d 1278 (S.D. Fla. 2011).

Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). As in this case, "[w]here the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." *Barnes v. Diamond Aircraft Indus.*, 499 F.Supp. 2d 1311, 1315 (S.D. Fla. 2007).

In this action, the dispositive issue is whether the Travelers' Policy provides coverage for Mr. Grosso's drowning death while he was scuba diving in the water on July 30, 2014. Since there is no issue as to any material fact, the Court must answer this question in the negative.

### II.  Florida law governs the interpretation of the Travelers' Policy.

A dispute over the interpretation of a marine insurance contract falls within admiralty jurisdiction, and as such, courts will apply state law unless an established federal admiralty rule governs. *Commercial Union Ins. Co. v. Pesante*, 459 F.3d 34, 37 (1st Cir. 2006). Whether a

marine insurance policy provides coverage to people while participating in a diving activity, does not implicate a well-established, entrenched precedent under admiralty law. *See, e.g.*, *Sylva v. Culebra Dive Shop*, 389 F.Supp. 2d 189, 202 (D.P.R. 2005) (third party liability coverage to divers in the water does not involve a doctrine of federal maritime law). In the absence of specifically controlling federal authority, the law of the state where a marine insurance contract is issued and delivered governs the construction of its language. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320-21 (1955). There is no dispute that the Travelers; Policy was issued and delivered to Salt 'N Blue in Florida. *See* Statement of Undisputed Material Facts ¶28; Ex. 6, Travelers' Policy, pg. 2 (Policy Declarations Page). Therefore, Florida law governs the interpretation of the Travelers' Policy.

  **III.**  **Travelers is entitled to summary judgment in its favor because under the plain language of the Travelers' Policy, there is no coverage for the drowning incident alleged in the Underlying Litigation because the incident was not "a result of the ownership, operation, or maintenance of the insured vessel."**

Under Florida law, the interpretation of insurance contracts is a question of law. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985); *XL Ins. Am., Inc. v. Ortiz*, 673 F.Supp. 2d 1331, 1341 (S.D. Fla. 2009). "In interpreting insurance contracts, the Florida Supreme Court has made clear that 'the language of the policy is the most important factor.'" *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005)).

Here, the Travelers' Policy language, at Part B: LIABILITY COVERAGE expressly states that Travelers "will pay sums that you or a covered person under this policy become legally obligated to pay *as a result of the ownership, operation or maintenance of the insured vessel* because of… bodily injury or loss of life."[10] Ex. 6, Travelers' Policy, pg. 10 (emphasis added). However, neither the allegations in the Underlying Litigation, nor the in-the-water death have anything to do with the ownership, operation, or maintenance of the Insured Vessel.

"Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.,* 913 So.2d 528, 532 (Fla. 2005). When the

---

[10] The Travelers' Policy also defines the "Insured Vessel" in pertinent part as "the vessel(s) shown on the Declarations Page, its primary motor(s) and its equipment. "Equipment" is defined as spars, sails, electrical devices, electronic navigation equipment, furniture, tender(s), tender motors, fittings, outriggers, downriggers and other equipment normally required for the operation, use or maintenance of the insured vessel; moorings, cradles and computer hardware and software whether used for navigation or not are excluded…" Ex. 6, Travelers' Policy, pg. 6.

policy language is "plain and unambiguous, there is no special construction or interpretation required, and the plain language of the policy will be given the meaning it clearly expresses." *Fla. Farm Bureau Ins. v. Birge*, 659 So. 2d 310, 312 (Fla. 2d DCA 1994).

In analyzing similar language, from an automobile perspective, the Florida Supreme Court has held that injuries suffered by an insured in a criminal assault following a traffic accident did not arise from the ownership, maintenance, or use of the tortfeasor's vehicle, and were therefore not covered by the insured's uninsured motorist policy. *See Race v. Nationwide Mut. Fire Ins. Co.*, 542 So. 2d 347, 351 (Fla. 1989). Accordingly, three rules have been set up to determine the insurer's liability:

> (1) The accident must have arisen out of the inherent nature of the automobile, as such; (2) The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; and (3) The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.

*Id.* at 349.

Here, the Insured Vessel was not even the physical situs of the drowning accident. Mr. Grosso died while diving in the water. There was no causal connection between Mr. Grosso's incident and the ownership, operation, or maintenance of the Insured Vessel. To be sure, Barkley/Lloyd's has all but admitted that Mr. Grosso's death did not arise out of the operation of the Insured Vessel because Lloyd's determined there was coverage under the Lloyd's Policy notwithstanding the exclusion in the Lloyd's Policy for bodily injury and death "arising out of the ownership, maintenance, [or] operation…of any … watercraft." *See* Statement of Undisputed Material Facts, ¶¶22 – 24. In this case, the Insured Vessel did not produce the injury (nor is that even alleged). Thus, there is no coverage under the Travelers' Policy as Mr. Grosso's death was not a result of the ownership, operation, or maintenance of the Insured Vessel.

**IV.    Travelers has no duty to defend the claims in the Underlying Litigation because they fall into the Travelers' Policy's clear exclusion for "loss of life… of any person while in the water or arising as a consequence of being in the water."**

The allegations in the Underlying Litigation fall within the exclusion in the Travelers' Policy for the loss of life to persons while in the water.  This – Mr. Grosso's death in the water – is the gravamen of the Underlying Litigation. If the allegations in the complaint fall within the exclusion, no duty to defend exists. *See Transcontinental Ins. Co. v. Ice Sys. of Am., Inc.*, 847 F.

Supp. 947, 949-50 (M.D. Fla. 1994) ("All of the allegations in the state court complaint fall within the exceptions to the insurance policy in question. Therefore it is the decision of this Court that TCI is not obligated to defend or indemnify ISA in the state court action in question, because the allegations in the state court complaint fall within the stated exceptions to the policy.").

"The duty to defend is determined by examining the allegations in the underlying complaint filed against the insured." *Falcon Trust Grp., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 725 F.Supp.2d 1363, 1367 (S.D. Fla. 2010). *See also Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L.*, 771 F.Supp.2d 1328, 1332 (S.D. Fla. 2011), *aff'd*, 469 Fed. App'x 772, (citing *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993)). To be sure, there is no duty to defend when the complaint shows that there is no coverage or that a policy exclusion applies. *Md. Cas. Co.*, 771 F.Supp. 2d at 1332. Indeed, "[w]here the application of one or more policy exclusions applies to the face of the complaint, no duty to defend exists, even if the complaint alleges facts that would otherwise give rise to a covered claim." *Chicago Title Ins. Co. v. Northland Ins. Co.,* 31 So. 3d 214 (Fla. 4th DCA 2010). It is therefore well-settled that "[a] liability insurance carrier must defend the insured *only* when the initial pleadings fairly bring the case within the scope of coverage… if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *Keen v. Florida Sheriff's Self-Insurance,* 962 So.2d 1021, 1024 (Fla. 4th DCA 2007) (emphasis in original).

Importantly, a determination that there is no duty to defend automatically results in a further determination that there is no duty to indemnify. Indeed, the duty to defend is broader than the duty to indemnify; therefore, a determination that there is no duty to defend logically requires a finding that there is also no duty to indemnify. *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.,* 16 So.3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend."). *See also Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc*., 595 F.Supp. 2d 1319, 1322 (S.D. Fla. 2009) (because the duty to defend is much broader than the duty to indemnify, under Florida law, the Court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.).

If, however, there is a finding of a duty to defend, the duty to indemnify must be separately considered. As with a duty to defend, there is no duty to indemnify where a loss falls

within an exclusion in the policy. *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F.Supp. 2d 1319, 1322 (S.D. Fla. 2009). However, in contrast to the duty to defend, the duty to indemnify is not triggered based upon the allegations in the complaint. Rather, regardless of the allegations in the complaint, the underlying facts of the litigation determine the duty to indemnify. *Hagen v. Aetna Cas. And Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996).

Here, the Complaint in the Underlying Litigation clearly alleges that Grosso's body was discovered in the water and that he had drowned. *See* Statement of Undisputed Material Facts ¶10; D.E. 19-1, ¶28. Further, the underlying facts of the Underlying Litigation are undisputed: Mr. Grosso was found unresponsive, without his regulator in his mouth, tangled in the dive flag line, approximately 15 feet below the water's surface, and resuscitation efforts were unsuccessful. *See* Statement of Undisputed Material Facts ¶7; [D.E. 19, ¶19; D.E. 48, ¶19 (admitted)]. Given the allegations in the Complaint and the underlying facts of the Underlying Litigation, there can be no finding that either a duty to defend or a duty to indemnify existed under the Travelers' Policy.

Exclusion K in Travelers' Policy expressly excludes coverage for "loss of life…of any person arising from…scuba diving." Ex. 6, pg. 10. Exclusion K, however, was changed by the Diveboat Limitation Endorsement to the Travelers' Policy. Ex. 6, pg. 21. The Diveboat Limitation Endorsement replaces Exclusion K, in part, with the following exclusionary language: "Bodily injury, loss of life or illness of any person while in the water or arising as a consequence of being in the water." *Id*. Thus, under the Diveboat Limitation Endorsement, Exclusion K is modified to expressly exclude bodily injury or loss of life "of any person while in the water or arising as a consequence of being in the water" from coverage. *Id.* This language could not be more clear. Thus, the Travelers' Policy contains a clear and unambiguous exclusion for in-water deaths and deaths arising as a consequence of being in the water, e.g. drowning deaths.

Since the Underlying Litigation alleges Grosso was in the water at the time of his unfortunate death and drowning, there is no insurance coverage under the Travelers' Policy for the claims alleged in the Underlying Litigation. Because it is an uncontested material fact that Grosso's incident occurred in the water, and not aboard the Insured Vessel, the Travelers' Policy's clear and unambiguous exclusion must be enforced, therefore precluding coverage for the claims made in the Underlying Litigation as a matter of law.

In *Sphere Drake Ins., PLC v. Fun Charters, Inc.*, No. CV-96-00667-HG, 1997 U.S. Dist. LEXIS 23936, 1997 WL 1065503 (D. Haw. June 26, 1997), aff'd, 16 F.3d 918 (9th Cir. 1998), the U.S. District Court for the District of Hawaii faced a marine insurance policy's exclusion similar to the one contained in the Travelers' Policy at issue. Specifically, the exclusion in *Sphere Drake* provided that: "We do not provide coverage for any person for Bodily Injury or Property Damage while in the water, entering or exiting the water in connection with any in water sports activity." *See Sphere Drake*, 1997 U.S. Dist. LEXIS 23936 at *16. Since it was undisputed that the injured party's claims arose from an injury or death while swimming back to the boat, the Court in *Sphere Drake* interpreted the policy's above-cited exclusion and found that: "According to the plain language of this provision, the Incident was excluded from coverage under the Policy, as it occurred while [the injured party] was either in the water or exiting the water in connection with snorkeling." *Id.*

Similarly, in *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d. 189, 193 (D. P.R. 2005) the Recreational Dive Boat General Endorsement in the insurance policy which stated that, ""we do not provide coverage for any person for Bodily Injury, Illness, Disease, Death or Property Damage while in the water in connection with any diving activity, or as a consequence of any diving activity" was upheld. In that case, a dive instructor had ordered the divers back into the boat after noticing the sea currents were too strong. *Id.* at 190. Plaintiff's wife was "trying to swim back to the vessel" when the instructor on the dive boat raised the anchor and operated the vessel to move it towards other drifting swimmers. *Id.* After that, the plaintiff's wife could not be found; she was presumed lost at sea and dead. *Id.* at 191. Plaintiff filed suit and the insurer filed a motion for summary judgment arguing, *inter alia*, that "the policy excludes coverage to persons participating in any diving activity while in the water." *Id.* The court agreed with the insurer and held that the in-water diving exclusion contained within the Dive Boat Endorsement thus precluded plaintiff's claims. *Id.* at 194 ("Since it is uncontested that Mrs. Wieditz disappeared while diving off Culebra Island, the incident is excluded from policy coverage. Summary Judgement as to [the insurer] is therefore appropriate.").

Like in *Sphere Drake* and *Sylva,* here, the Travelers' Policy contains an in-water exclusion which clearly and unambiguously excludes coverage for liability to persons who suffer bodily injury or loss of life while in the water. Therefore, according to the plain language of the

Travelers' Policy, there is no coverage for Mr. Grosso's incident since it occurred while he was in the water.

Because the question of insurance coverage relates solely to the interpretation of the Travelers' Policy, declaratory relief lies within the province of the Court. There being no disputed genuine material facts as to Mr. Grosso's presence in the water at the time of the alleged loss, the Court should grant summary judgment as a matter of law in Plaintiff Travelers' favor and declare that the Travelers' Policy provides no coverage for Barkley/Lloyd's.

V.   **Because Salt 'N Blue is an Additional Insured under the Lloyd's Policy and Lloyd's has admitted coverage, Barkley/Lloyd's should reimburse Travelers' for its costs of defending Salt 'N Blue, LLC in the Underlying Litigation.**

It is clear that there was no coverage available with regard to the Underlying Litigation under the Travelers' Policy. It is equally clear that there was coverage for not only Mr. Barkley, but also for Salt 'N Blue, LLC under the Lloyd's Policy. However, the Lloyd's Policy failed to provide Salt 'N Blue, LLC with a defense or indemnity in the Underlying Litigation; those costs were incurred solely by Travelers.

An insurance "company acts at its peril in refusing to defend its insured and will be held responsible for the consequences." *Fla. Farm Bureau Mut. Inc. Co. v. Rice,* 393 So.2d 552, 555-56 (Fla. 1st DCA 1980). "If the insurer breaches its duty to defend it – like any other party who fails to perform its contractual obligations – becomes liable for all damages naturally flowing from the breach. *Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n.,* 483 So.2d 513, 516 (Fla. 3d DCA 1986. Indeed, even if an insurer refuses to defend based on an honest, but erroneous, belief that it had no duty to defend, the insurer remains liable for its insured's damages occasioned by the insurer's refusal to defend. *Nova Cas. Co. v. OneBeacon Am. Ins. Co.,* 603 F. App'x 989, 904 (11th Cir. 2015) (holding that once a primary insurer refused to defend its insured based on an honest, but erroneous, belief that it had no duty to defend, that primary insurer acted at its own peril, and therefore, "[t]he burden of funding $1 million of the [underlying litigation settlement fell] squarely on the [primary insurer]'s shoulders"). Of course, where "an insurance company has more than one insured, it owes a duty to act in good faith towards both or all of its insureds." *Id.* at 901.

Here, there is no coverage, no duty to defend, and no duty to indemnify any of the insureds under the Travelers' Policy. However, Lloyd's has admitted coverage. Therefore,

Lloyd's had a duty to defend and indemnify its insured, including additional insured Salt 'N Blue. In view of the foregoing, Lloyd's should be required to reimburse Travelers' for the costs and expenses incurred by Travelers in the defense and indemnification of Salt 'N Blue, LLC in the Underlying Litigation.[11]

## CONCLUSION

**WHEREFORE**, Travelers' respectfully prays for a judicial declaration that there is no coverage under the Travelers' policy for the deaths of persons who were not on board the vessel, but rather, were in the water, at the time of their injury or death, and consequently that Plaintiff Travelers had no duty to defend Defendant Barkley/Lloyd's, Salt 'N Blue, or any other insured under the Travelers' Policy in the Underlying Litigation and, further, had no duty to indemnify from any third party claims in the Underlying Litigation. Travelers further requests this Court hold that Lloyd's owed Salt 'N Blue a duty to defend and indemnify under the Lloyd's Policy, and, therefore, enter an order requiring Defendant Barkley/Lloyd's to reimburse Travelers for the costs and expenses incurred by Travelers in the defense of Salt 'N Blue in the Underlying Litigation in addition to any further relief as this Court deems just and equitable.

---

[11] Travelers' will provide the Court with an accounting of the costs incurred by Travelers in defending the Underlying Litigation upon request.

## CERTIFICATE OF SERVICE

We certify that on May 30, 2017 we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

**RESPECTFULLY SUBMITTED,**

**McAlpin Conroy, P.A.**
*Counsel for Plaintiff Travelers*
Brickell City Tower
80 SW 8th Street, Suite 2805
Miami, Florida 33130
Telephone: (305) 810-5400
Facsimile: (305) 810-5401

By: */s/ Michael E. Conroy*
Michael E. Conroy, Esq.
FL Bar No.: 845434
mconroy@mcalpinconroy.com
bvelasquez@mcalpinconroy.com
Kassandra Doyle Taylor, Esq.
FL Bar No.: 68645
ktaylor@mcalpinconroy.com

## SERVICE LIST
Case No: 16-61768-CIV-ALTONAGA/O'Sullivan

Douglas M. McIntosh
dmcintosh@mscesq.com
Ilana B. Olman
iolman@mscesq.com
*Attorneys for Defendant/Counter-Plaintiff, Douglas Barkley, for the use and benefit of Certain Underwriters at Lloyd's London*
McIntosh, Sawran & Cartaya, P.A.
1776 East Sunrise Boulevard
P.O. Box 7990
Ft. Lauderdale, FL 33338-7990
Telephone: (954) 765-1001
Facsimile: (954) 765-1005