UNITED STATES DISTRICT COURT OF
THE SOUTHERN DISTRICT OF FLORIDA

TRAVELERS PROPERTY CASUALTY        CASE NO. 0:16-cv-61768-CIV-
COMPANY OF AMERICA,                  ALTONAGA/O'SULLIVAN

       Plaintiff,

vs.

DOUGLAS BARKLEY,

       Defendant.

_____/

DOUGLAS BARKLEY,

       Counter-Plaintiff,

v.

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

       Counter-Defendant.

_____/

## DEFENDANT/COUNTER-PLAINTIFF, DOUGLAS BARKLEY'S MOTION FOR FINAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant/Counter-Plaintiff, DOUGLAS BARKLEY [individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4020, Ark Underwriting, Inc., as assignee of his transfer of interest (hereinafter "BARKLEY" or "LLOYD'S" or "BARKLEY/LLOYD'S" or "Defendant/Counter-Plaintiff")], by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Southern District of Florida, Local Rule 7.1, hereby files this Motion for Final Summary Judgment against the Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA (hereinafter "TRAVELERS") and Supporting Memorandum of Law, and states as follows:

### INTRODUCTION

This declaratory judgment action arises from the underlying case of *Glenn J. Grosso and Dineen M. Franchina, as Personal Representatives of the Estate of Joseph P. Grosso, Deceased v. Salt 'N Blue, LLC, et al.*, Case No. CACE-16-003923, which was pending in the 17th Judicial District Court in and for Broward County, Florida (the "Underlying Action") [D.E.19-1].

TRAVELERS provided a defense and paid indemnity on behalf of its insureds/named defendants, SALT 'N BLUE, LLC ("SALT 'N BLUE") and ROBERT WRANOVICS ("WRANOVICS"), in the Underlying Action. BARKLEY also qualified as an additional insured under TRAVELERS' "Commercial Marine Insurance" policy. Notwithstanding TRAVELERS' duty to defend and indemnify BARKLEY as an "additional named insured" under its Policy, TRAVELERS: a) failed to provide a defense to BARKLEY in the Underlying Action, where it was on notice of the lawsuit and was providing a defense to the co-defendants from inception of the lawsuit; b) failed to reimburse BARKLEY/LLOYD'S for defense fees and costs incurred on his behalf by LLOYD'S; and c) refused to participate in contribution toward the settlement paid on behalf of BARKLEY, in the face of an expiring time limit demand. Defendant/Counter-Plaintiff, LLOYD'S is entitled to final summary judgment at this time because there is no genuine dispute as to any material fact and BARKLEY/LLOYD'S is entitled to judgment as a matter of law.

## STATEMENT OF MATERIAL UNDISPUTED FACTS
### The Underlying Claim and Lawsuit

1. On July 30, 2014, Joseph P. Grosso paid for and participated in a mini lobster session scuba dive aboard the M/V Scubatyme III. <u>See</u> D.E. 19-1, ¶18 of the Underlying Complaint.

2. SALT 'N BLUE was the owner of a seagoing vessel known as M/V Scubatyme III. <u>See</u> D.E. 19-1, ¶9 of the Underlying Complaint.

3. According to the Underlying Complaint, "SALT 'N BLUE, LLC was operating the M/V Scubatyme III in the traditional maritime activity of transporting passengers to and from a scuba dive site, giving general and specific dive briefings and supervising all diving activities aboard the M/V Scubatyme, III for the specific purpose of hunting lobsters during the lobster mini-season for commercial gain." <u>See</u> D.E. 19-1, ¶17 of the Underlying Complaint.

4. WRANOVICS was the captain and was in charge of all activities at sea performed by the M/V Scubatyme III, including supervising all diving activities. <u>See</u> D.E. 19-1, ¶11 of the Underlying Complaint.

5. BARKLEY was a "mate and a dive master in charge of the diving operations of the SALT 'N BLUE, LLC giving general and site specific dive briefings and the supervising

of diving activities being conducted aboard and from the M/V Scubatyme III." <u>See</u> D.E. 19-1, ¶13 of the Underlying Complaint.

6. Joseph P. Grosso's brother, Nicholas Grosso was his "dive buddy" for purposes of the scuba dive on the date in question. <u>See</u> D.E. 19-1, ¶19 of the Underlying Complaint.

7. Following the dive, Joseph and Nicholas Grosso returned to the M/V Scubatyme III. Nicholas Grosso had exhausted his air supply. Joseph Grosso had some minimal air remaining, and requested permission to do one more dive to retrieve a lobster that he had previously marked with a buoy. <u>See</u> D.E. 19-1, ¶22-23 of the Underlying Complaint.

8. Without checking or inquiring as to the amount of air remaining in Joseph Grosso's tank, permission was granted by a crewman or crewmen of the M/V Scubatyme III and he was instructed to do a "bounce" dive. <u>See</u> D.E. 19-1, ¶24 of the Underlying Complaint.

9. A member of the crew of the M/V Scubatyme III subsequently threw Joseph Grosso a line with a buoy attached to it, thereafter "abandon[ing] the dive site" by driving the vessel away from Joseph Grosso to collect the remaining divers, leaving him alone in the water without a "dive buddy". <u>See</u> D.E. 19-1, ¶26 of the Underlying Complaint.

10. Upon the M/V Scubatyme, III's return to the spot that Joseph Grosso was allowed to re-submerge approximately twenty (20) minutes later, the M/V Scubatyme III found that Joseph Grosso had become entwined in the line of the buoy supplied by SALT 'N BLUE, LLC, approximately fifteen (15) feet below the surface of the water, without air, with his mouth guard floating in the water and drowned. <u>See</u> D.E. 19-1, ¶28 of the Underlying Complaint.

11. Joseph Grosso died on July 30, 2014. <u>See</u> D.E. 1-1, ¶4 of the Underlying Complaint.

12. GLENN J. GROSSO and DINEEN M. FRANCHINA were subsequently appointed personal representatives of the Estate of Joseph P. Grosso. <u>See</u> D.E. 19-1, ¶6 of the Underlying Complaint.

13. As a result of the drowning death of Joseph Grosso, his estate filed a wrongful death lawsuit, seeking damages under Florida's Wrongful Death Act, Florida Statutes 768.16-768.26. The Underlying Action named SALT 'N BLUE, WRANOVICS and BARKLEY as defendants. <u>See</u> D.E. 19-1.

14. Under each and every count, the plaintiffs in the Underlying Action pled that the underlying defendants (i.e. SALT 'N BLUE, WRANOVICS and BARKLEY) breached

their duty of reasonable care for the safety of Joseph Grosso and were negligent and/or grossly negligent "by the <u>operation of the vessel</u> in abandoning the dive site and leaving Joseph P. Grosso alone in the water, without a 'dive buddy', for approximately 20 minutes, to collect the rest of the divers, instead of waiting for him to complete the short 'bounce' dive that he was instructed to perform". See D.E. 19-1; ¶ 35(b), 45(b), 55(b), 66(b), 76(b), and 87(b) of the Underlying Complaint (Emphasis added).

<u>**The Policies of Insurance**</u>

15. TRAVELERS issued a "Commercial Marine Insurance" Policy, number SY00002292 to "SALT N BLUE LLC", for the policy period of November 11, 2013 to November 11, 2014. See D.E. 19-2, TRAVELERS' policy, number SY00002292.

16. The "Commercial Marine Insurance" Policy issued by TRAVELERS [D.E. 19-2], provides the following relevant definitions:

> **"Who Is Insured by This Policy"**
> a. "Named Insured" – with regard to a Commercial Venture, means the Named Insured as indicated on the Declarations Page. "Named Insured" with regard to Recreational Use, means the Named Insured as indicated on the Declarations Page and any family member within your household and any other person using the insured craft with your permission.
> b. <u>"Additional Named Insured(s)" – with regard to a Commercial Venture, means the Captain and designated crewmember(s).</u>
>
> (Emphasis Added).
> ***
> **Commercial Venture** means any time the insured vessel is used to carry passengers who have agreed to pay to be on the vessel. It includes any time the insured vessel is <u>being operated by a captain</u> or crewmember to prepare such a trip.
>
> [FORM CL-2013-2 REV 9/1/13; page 4](Emphasis added).

17. The TRAVELERS' "Commercial Marine Insurance" Policy [D.E. 19-2] also contains the following relevant coverage provisions:

> **PART B: LIABILITY COVERAGE**
>
> **PERILS INSURED AGAINST**
> We will pay sums that you or a covered person under this policy become legally obligated to pay as a result of the <u>ownership, operation or maintenance of the insured vessel</u> because of:

4

    a.  attempted or actual raining, removal or destruction of the wreck of your insured property;

    b.  failure to raise, remove or destroy the wreck of your insured property;

    c.  <u>bodily injury or loss of life;</u>

    d.  loss or damage to any property;

[FORM CL-2013-2 REV 9/1/13; page 8](Emphasis added).

18. LLOYD'S issued a "Professional Liability Insurance Master Policy", number SA00336-14582, which named BARKLEY as an Insured, pursuant to the "Professional Liability Evidence of Insurance". <u>See</u> D.E. 48-1, LLOYD'S policy, number SA00336-14582.

19. Both the LLOYD's Policy [D.E. 48-1] and the TRAVELERS' Policy [19-2], when read collectively, call for pro rata allocation of the limits of liability for the benefit of BARKLEY.

20. BARKLEY qualified as an "Additional Named Insured" under the TRAVELERS' policy, as it is undisputed that he was a "designated crewmember", as set forth under the TRAVELERS' policy definition for "Who Is an Insured by This Policy". <u>See</u> D.E. 19-2, TRAVELERS' policy.

21. TRAVELERS retained Donna E. Albert, Esq. to represent the TRAVELERS' insureds. On March 20, 2015 (prior to the filing of the Underlying Complaint), attorney Albert sent a letter to the Kelly Uustal firm (a predecessor law firm representing the Grosso Estate), advising "the undersigned represents Salt 'N Blue, LLC as well as the vessel <u>and its crew</u>". <u>See</u> Letter from Donna E. Albert, Esq. to Michael R. Kaufman, Esq. dated March 20, 2015 (bates stamped TRAVELERS 421-422), attached hereto as Exhibit "A". (Emphasis added).

22. Although BARKLEY qualified as an "Additional Named Insured" under the TRAVELERS' policy, and despite its assigned counsel's recognition in Exhibit "A", TRAVELERS failed to appoint defense counsel to represent BARKLEY's interests in the Underlying Litigation and failed to indemnify BARKLEY despite its contractual obligations to do so.

23. BARKLEY also qualified as an insured under the "Professional Liability Insurance Master Policy" issued by LLOYD'S.

**MCINTOSH SAWRAN & CARTAYA, P.A.·** ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304

TELEPHONE (954) 765-1001          FACSIMILE (954) 765-1005

24. LLOYD'S provided a defense to BARKLEY in the Underlying Action, without knowledge of the coverage also available to BARKLEY under the TRAVELERS' Policy.

25. TRAVELERS provided a defense to SALT 'N BLUE and WRANOVICS in the Underlying Action, but did not defend BARKLEY.

### Tender of Defense to TRAVELERS and Time Limit Settlement Demand

26. When it came to the attention of LLOYD'S and BARKLEY'S defense counsel in the Underlying Action that coverage was also available to BARKLEY under the TRAVELERS' policy, counsel for BARKLEY in the Underlying Action demanded that TRAVELERS immediately provide a defense to BARKLEY going forward and that BARKLEY be reimbursed for all defense costs incurred on his behalf. See Letter from James Hurley, Esq. to Michael Conroy, Esq. dated September 26, 2016, attached hereto as Exhibit "B".

27. On or about October 5, 2016, TRAVELERS conditionally accepted BARKLEY's tender of defense, under a reservation of rights, wherein TRAVELERS conceded that BARKLEY qualified as an additional named insured under the TRAVELERS' policy for the incident which was the subject of the Underlying Action. See Letter from Peter Alesi, Senior Technical Specialist for TRAVELERS dated October 5, 2016, attached hereto as Exhibit "C".

28. Notwithstanding its belated acknowledgment of its duty to defend BARKLEY, TRAVELERS never contributed toward costs and expenses incurred in the defense of BARKLEY in the Underlying Action, nor did TRAVELERS reimburse LLOYD'S for its pro rata share of defense fees and costs incurred in the defense of BARKLEY in the Underlying Action, despite repeated demand therefor.

29. On October 11, 2016, Counsel for the plaintiffs in the Underlying Action presented a time limit settlement demand, which contemplated payment of a confidential sum on behalf BARKLEY and co-defendants, WRANOVICS and SALT 'N BLUE. More specifically, the settlement demand included as a condition to full and final settlement of the claims presented against WRANOVICS and SALT 'N BLUE that BARKLEY pay a significant sum for settlement of the claims presented in the Underlying Action for his own, separate release by the survivors of Joseph Grosso. The terms of the settlement are

subject to a Confidentiality Covenant, and shall be filed with the Court under seal, pursuant to S.D.Fla.L.R.5.4(b).

30. TRAVELERS refused to participate in the funding needed for settlement of the claims presented against its "additional named insured", Douglas Barkley, on a pro rata basis with LLOYD'S, in any manner.

31. Based on TRAVELERS' breach of its policy obligations owed to BARKLEY, as an "additional named insured" under its Policy, LLOYD'S had no choice but to pay the entire settlement demand presented against BARKLEY, in order to protect its insured from exposure in excess of the LLOYD'S and TRAVELERS' policy limits. TRAVELERS refused to participate despite repeated demand that it do so. The sum paid was made under terms of Confidentiality Covenant, and shall be filed with the Court under seal, pursuant to S.D.Fla.L.R.5.4(b).

32. The Underlying Action was dismissed with prejudice on November 14, 2016. See Order of Dismissal with Prejudice, Instrument #114047569, attached hereto as Exhibit "D".

33. BARKLEY assigned his rights to recovery under the TRAVELERS' policy to LLOYD'S for valid consideration. As such, LLOYD'S was and is equitably subrogated to all rights of BARKLEY to seek indemnity or defense from TRAVELERS for breach of its fiduciary obligations owed under its policy, to BARKLEY.

### The Subject Lawsuit/Counterclaim

34. TRAVELERS filed a Complaint for declaratory relief against SALT 'N BLUE, WRANOVICS and BARKLEY, wherein TRAVELERS sought a judicial declaration that it was not obligated to defend SALT 'N BLUE, WRANOVICS and BARKLEY in the Underlying Action. See D.E. 1.

35. TRAVELERS subsequently filed an Amended Complaint for declaratory relief, which added the underlying plaintiffs, GLENN J. GROSSO and DINEEN M. FRANCHINA, as Personal Representatives of the Estate of Joseph Grosso, as Defendants. See D.E. 19.

36. LLOYD'S filed an Answer and Affirmative Defenses to Plaintiff's Amended Complaint [D.E. 19] and Counterclaim for Declaratory Relief. See D.E. 48.

37. Lloyd's seeks a declaration that a) BARKLEY qualifies as Additional Insured under the TRAVELERS' policy; b) TRAVELERS was obligated to provide a defense to BARKLEY with respect to the Underlying Action; c) TRAVELERS is obligated to

7

reimburse LLOYD'S for its pro rata share (50%) of defense fees and costs incurred by LLOYD'S in its defense of BARKLEY in the Underlying Action; d) TRAVELERS was obligated to indemnify BARKLEY for its pro rata share (50%) of the settlement paid on behalf of BARKLEY in the Underlying Action; e) as a direct result of TRAVELERS' failure to honor its good faith obligations owed to its "additional named insured", BARKLEY, LLOYD'S was forced to incur damages significantly in excess of LLOYD'S pro rata share of the settlement achieved on behalf of BARKLEY; and f) TRAVELERS is obligated to LLOYD'S, as assignee of BARKLEY, for the payment of attorney's fees and costs incurred in the Underlying Action, as well as in the defense of the Declaratory Judgment Action filed by TRAVELERS [D.E. 19; 48].

38. As will be addressed in further detail below there is no dispute of material fact that BARKLEY qualified as an "additional named insured" under the TRAVELERS' policy as a "designated crewmember" on the insured vessel, M/V Scubatyme III, and that TRAVELERS owed a duty to contribute its pro rata share (50%) with LLOYD'S, toward the defense and indemnity ultimately paid on behalf of its mutual insured, BARKLEY, as a matter of law.

## MEMORANDUM OF LAW AND ARGUMENT

### I.  Legal Standard for a Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Once the movant demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to identify specific facts demonstrating that a genuine issue for trial does exist. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The opposing party may not simply rely on allegations made in the pleadings to establish an issue of material fact. Lanz v. Resolution Trust Corp., 764 F.Supp. 176, 178 (S.D. Fla. 1991).

### II.  Choice of Law

The rule of "lex loci contractus," as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. American United Life Ins. Co. v. Martinez, 480 F.

3d 1043, 1059 (11th Cir. 2007)(when the contract deals with an insurance policy, the locus contractus is generally the state where the insured executed the insurance application).

Here, the LLOYD'S "Professional Liability Insurance" policy [D.E. 48-1] was issued by First Flight Insurance Group, Inc. in Kitty Hawk, North Carolina to the named insured, BARKLEY, who completed his application for insurance in Fort Lauderdale, Florida. Therefore, the "last act" binding coverage was completion of the application for insurance and/or in the alternative delivery of the insurance cover to BARKLEY in Florida.

The TRAVELERS' "Commercial Marine Insurance" policy [D.E. 19-2] was issued by Charter Lakes Marine Insurance Agency in Grand Rapids, Michigan to the named insured, SALT 'N BLUE in Pompano Beach, Florida. Thus, the "last act" binding coverage was delivery of the insurance cover to SALT 'N BLUE in Florida.

Based on the foregoing, Florida law should be applied with respect to policy interpretation and construction of both the LLOYD'S and TRAVELERS' policies, for the coverage issues presented.

### III. Argument

#### a. Policy Interpretation Under Florida Law

Under Florida law, insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage. Singer v. Colony Ins. Co., 147 F. Supp. 3d 1369, 1375 (S.D. Fla. 2015). When the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the language is considered ambiguous and, thus, construed in favor of coverage. Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015). When an insurance contract is ambiguous, it is to be liberally construed in favor of the insured and strictly against the insurer. Washington Nat. Ins. Corp. v. Ruderman, 117 So. 3d 943 (Fla. 2013). Whether an ambiguity exists in an insurance policy is a question of law. Abraham K. Kohl, D.C. v. Blue Cross & Blue Shield of Florida, Inc., 955 So. 2d 1140, 1143 (Fla. 4th DCA 2007).

#### b. BARKLEY Qualified as an "Additional Named Insured" Under the TRAVELERS' policy

The TRAVELERS' policy [D.E. 19-2] provides under its definition for "Who Is Insured by This Policy" that "Additional Named Insured(s)" include "the Captain and designated

crewmember(s)".[1] It is undisputed that BARKLEY was a "designated crewmember" on the insured vessel, the M/V Scubatyme III. The Underlying Complaint alleged that BARKLEY was a "mate and a dive master in charge of the diving operations of the SALT 'N BLUE giving general and site specific dive briefings and the supervising of diving activities being conducted aboard and from the M/V Scubatyme III". <u>See</u> D.E. 19-1, ¶13 of the Underlying Complaint. TRAVELERS also conceded in its letter dated October 5, 2016 from Peter Alesi, Senior Technical Specialist for TRAVELERS that "Mr. Barkley is qualified as an additional named insured under the Policy for this incident". <u>See</u> Exhibit "C". Additionally, TRAVELERS provided a defense and ultimately paid <u>indemnity</u> (albeit a nominal sum) on behalf of WRANOVICS, as the <u>Captain</u> on the insured vessel, under the <u>exact same</u> coverage grant for captain and crewmembers, for which BARKLEY was also entitled to a defense and indemnity. <u>Nova Cas. Co. v. OneBeacon Am. Ins. Co.</u>, 603 Fed. Appx. 898, 901 (11th Cir. 2015)(citing <u>Contreras v. U.S. Sec. Ins. Co.</u>, 927 So.2d 16, 21 (Fla. 4th Dist.Ct.App.2006)(explaining if an insurance company has more than one insured, it owes a duty to act in good faith towards both or all of its insureds).

TRAVELERS clearly owed a duty to defend and indemnify BARKLEY with respect to the Underlying Action, as an "additional named insured" under its policy, to the same extent a duty was owed to WRANOVICS, for which coverage was acknowledged. Although TRAVELERS' assigned defense counsel initially made a representation that she was retained to represent SALT 'N BLUE, LLC, as well as the "vessel and its crew" (i.e. BARKLEY), a defense was never provided to BARKLEY. <u>See</u> Exhibit "A". TRAVELERS wholly ignored its contractual obligations to one insured (BARKLEY), while it provided a defense and paid indemnity on behalf of its other insured (WRANOVICS).  It is without question that BARKLEY met the definition of an "additional named insured" under the TRAVELERS' policy, as a matter of law.

### c.  The Underlying Action Arose out of the "Operation" of the Vessel

The TRAVELERS' "Commercial Marine Insurance" policy unequivocally provides coverage for liability as a result of the ownership, <u>operation</u> or maintenance of the insured vessel because of loss of life. Specifically, the policy provides:

### PART B: LIABILITY COVERAGE

---

[1] However, "designated crewmember(s)" is not defined in the TRAVELERS' policy.

*Motion for Final Summary Judgment*
CASE NO. 0:16-cv-61768

**PERILS INSURED AGAINST**
We will pay sums that you or a covered person under this policy become legally obligated to pay as a result of the <u>ownership,</u> <u>**operation**</u> or maintenance of the insured vessel because of:
                                    ***
g.   <u>bodily injury or **loss of life**</u>;

[FORM CL-2013-2 REV 9/1/13; page 8](Emphasis added).

The complaint in the Underlying Action alleged that at all times material to the subject incident (i.e. the drowning death of Joseph Grosso), "SALT 'N BLUE, LLC was <u>operating</u> the M/V Scubatyme III in the traditional maritime activity of transporting passengers to and from a scuba dive site, diving activities above the M/V Scubatyme, III for the specific purpose of hunting lobsters during the lobster mini-season for commercial gain" [D.E. 19-1; ¶17]. (Emphasis added). The Underlying Complaint further alleged that permission was granted by a crewman or crewmen of the M/V Scubatyme III to do a "bounce dive" while Joseph Grosso was still on the vessel, without checking or inquiring as to the amount of air remaining in Joseph Grosso's tank [D.E. 19-1, ¶24].

According to the Underlying Complaint, SALT 'N BLUE (as owner and operator of the insured vessel, M/V Scubatyme III), WRANOVICS (as captain) and BARKLEY (as mate and dive master, i.e. a crewmember) breached their duty of reasonable care for the safety of Joseph Grosso and were negligent and/or grossly negligent "by the **operation of the vessel** in abandoning the dive site and leaving Joseph P. Grosso alone in the water, without a 'dive buddy', for approximately 20 minutes, to collect the rest of the divers, instead of waiting for him to complete the short 'bounce' dive that he was instructed to perform" [D.E. 19-1; ¶ 35(b), 45(b), 55(b), 66(b), 76(b), and 87(b)]. Plaintiff below also alleged all three were negligent by giving permission to Joseph Grosso to re-submerge for a "bounce" dive, without checking the remaining air in Joseph Grosso's tank, while he was onboard the vessel (an activity within the scope of operating a charter dive vessel) [D.E. 19-1; ¶ 35(c), 45(c), 55(c), 66(c), 76(c), and 87(c)]. (Emphasis added).

The death of Joseph Grosso and liability associated with same, was at least in part occasioned as a "result of" the ownership and <u>operation</u> of the M/V Scubatyme, III. By analogy, a Florida appellate court  explained that broad construction of the phrase "arising out of" the use, operation or ownership of a motor vehicle in the insuring clause of a policy requires a nexus or

MCINTOSH SAWRAN & CARTAYA, P.A.• ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001            FACSIMILE (954) 765-1005

causal relationship between use or operation or ownership of the vehicle and injuries giving rise to the suit, in order to activate coverage. <u>Westmoreland v. Lumbermens Mut. Cas. Co.</u>, 704 So. 2d 176, 185 (Fla. 4th DCA 1997). Here, there is a nexus and causal relationship between the operation and ownership of the insured vessel and the death of Joseph Grosso, which gave rise to the Underlying Action, i.e. Joseph Grosso's death occurred as a proximate result of ownership and/or operation of the charter scuba vessel in providing instruction to Joseph Grosso while on board the insured vessel, to re-submerge for a "bounce dive" without checking the air in his tank, and subsequently negligently operating the vessel by abandoning the dive site and leaving Joseph Grosso alone in the water.

As such, the allegations pled against BARKLEY in the Underlying Action constitute exactly the type of perils the "Commercial Marine Insurance" policy issued by TRAVELERS was meant to provide coverage for. The foregoing allegations absolutely triggered a duty to defend and indemnify BARKLEY for his liability which resulted from the negligent operation of the insured vessel. Notwithstanding TRAVELERS' contractual and good faith obligations to defend and indemnify its "additional named insured", BARKLEY, TRAVELERS failed to do so, despite several requests made on behalf of BARKLEY/LLOYD'S.

### d.   The TRAVELERS' Policy is Illusory and Ambiguous

TRAVELERS attempts to evade its duty to defend and indemnify BARKLEY with respect to the Underlying Action by relying on the "Diveboat Limitation Endorsement" [Form CL4] in the TRAVELERS' "Commercial Marine Insurance" policy which replaced "Part B: Liability Coverage – Exclusion K" with an exclusion purportedly barring from coverage "Bodily injury, loss of life, or illness of any person while in the water or arising as a consequence of being in the water" [D.E. 19-2; form number CL4, Page 21 of 22]. TRAVELERS' reliance on the "Diveboat Limitation Endorsement" in order to avoid coverage fails as a matter of law, as this Endorsement is not only ambiguous, but also effectively renders the TRAVELERS' policy illusory.

### i.   The TRAVELERS' Policy is Illusory

When policy provisions, limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory. <u>TIG Ins. Co. v. Smart School</u>, 401 F. Supp. 2d 1334 (S.D. Fla. 2005) (applying Fla. law); <u>Purrelli v. State Farm Fire and Cas. Co.</u>, 698 So.2d 618, 619 (Fla. 2d DCA 1997)(holding that a policy that "purports to insure invasion of privacy,

an intentional tort, but excludes acts 'intended' by the insured and limits coverage to 'accidents'"
was illusory and the insurer was liable; "the limitation and exclusion completely swallowed up
the insuring provision creating the 'grossest form of ambiguity.'")

Here, the TRAVELERS' policy provides coverage to the following insureds: 1) M/V
Scuba Tyme III, as an insured vessel; 2) SALT 'N BLUE, as the insured owner/operator of the
vessel; 3) WRANOVICS, as the boat captain; and 4) BARKLEY, as a designated crewmember.
Just as in Purrelli, supra, the TRAVELERS' policy purports to insure for liability for bodily
injury and death as a result of negligent operation of the M/V Scubatyme III in the traditional
maritime activity of transporting charter passengers to and from a scuba dive site, giving general
and specific dive briefings and supervising all diving activities aboard the M/V Scubatyme, III.
The policy then attempts to exclude liability for bodily injury and death to "any person while in
the water or as a consequence of being in the water". The TRAVELERS' policy insures for, tort
liability for accidents which occur as a result of the operation of the M/V Scubatyme III in
performance of its dive charters. See Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 787 n. 9
(Fla. 2004)(explaining that an insurance policy should not be interpreted in a "vacuum" and that
"it would make little sense not to interpret [the policy] with reference to the circumstances under
which the parties entered into the contractual agreement").

A commercial marine insurance policy written to three classes of insureds, for tort
liability arising from the operation of the M/V Scubatyme III, must make sense to the
commercial venture insured, and cannot be interpreted in a vacuum. Here, TRAVELERS
purports to insure BARKLEY for tort liability stemming from his role as a crewmember on
board a charter dive vessel, for liability arising from liability events arising out of (negligent)
operation of the vessel. If TRAVELERS is correct and its policy is read to take away the
coverage it provides because the injured party is in the water at the time of his or her injury, it
becomes illusory because the limitation/Exclusion K completely swallows up the insuring
agreement amounting to the truest form of ambiguity. Purrelli v. State Farm, supra. To hold
otherwise would be tantamount to excluding coverage when a crewmember is negligent a charter
passenger falls overboard, and then both crew and captain negligently operate the vessel and run
the passenger over! Surely the obvious illusory nature of such a policy is evident. In fact,
Travelers' 30(b)(6) corporate representative, Mark Smieya's testimony magnifies the inherent

**MCINTOSH SAWRAN & CARTAYA, P.A.** • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304

TELEPHONE (954) 765-1001          FACSIMILE (954) 765-1005

ambiguity raised by the "Diveboat Limitation Endorsement". More specifically, Mr. Smieya

testified in relevant part:

> *Q. Well, let's take it hypothetically. What if a passenger got knocked unconscious on the vessel, fell over into the water and died because they drowned but the precipitating cause of getting in the water was the operation or negligent operation of the vessel? Are you saying there's no coverage under your policy for that?*
> *A. I'm saying I'm not going to answer a hypothetical question like that.*
> ***
> *A. I would review the coverage under the policy and circumstances of the loss and make a coverage determination after complete coverage review and review of the circumstances of the loss.*
> *Q. Okay. So then, by your answer, do I -- do I understand you to say that it could be covered if the person was injured on the vessel, fell into the water and drowned?*
> *A. Bodily injury on the vessel could be covered.*
> *Q. Even though they drowned in the water?*
> *A. Like you said, the bodily injury on the vessel would be covered.*
> *Q. Well, if -- okay. So the bump on the head could be covered. Are you saying that the bump on the held would be covered but the drowning wouldn't be because they were in the water?*
> *A. Potentially.*
> *Q. Really? So you throw into -- your insured throws into a chain of causation and injury that causes somebody to go into the water, they die because they can't breath [sic] underwater because they're knocked unconscious, and you think you'd only be responsible for the head injury and not the death?*
> > *MR. CONROY: Objection to form.*
> > *THE WITNESS: That's the not circumstance of this claim.*
> *BY MR. McINTOSH:*
> *Q. I understand that. I'm asking about coverage under your policy --*
> *A. Correct.*
> *Q. -- which I've alleged is ambiguous, which I've alleged is illusory, okay? That's why I'm asking this question. So I'd like an answer to that question. Are you saying that there could be a claim that's partly covered because the injury occurred on the vessel but not fully covered because they drown?*
> *A. I'm saying, what we might have is a situation where we're having -- going into court and asking the judge to make a decision about whether our exclusion applies, like the circumstances in this claim.*
> *Q. But that doesn't answer my question with all respect. My question is: Are you saying as the company representative with the most knowledge about the Travelers policy that there is a possibility with the right circumstances and events that you could have coverage for a passenger on the vessel from a head injury that they incurred because of negligent operation of the vessel but who then fell into the water and drowned and you'd cut the coverage off and say, but I'm not paying for the death, I'm only paying for the bump on the head?*
> > *MR. CONROY: Objection to form. Asked and Answered.*

14

> *THE WITNESS: We'd have to look at the circumstances of the loss and how the injury caused allegedly the death.*
> *BY MR. McINTOSH: Again, there is a possibility there could be coverage under that hypothetical under your policy?*
> *A.      Yes.* (Emphasis added)

See Smieya Dep. 253:23-257:6, March 21, 2017, excerpt attached hereto as Exhibit "E".

TRAVELERS' policy is clearly illusory, and must be construed in favor of coverage, as a matter of law. TIG Ins. Co., supra.

### ii.  The TRAVELERS' Policy is Ambiguous

It is important to note that the TRAVELERS' policy is not a standard, industry-approved "ISO" form policy. It instead contains non-standard, customized endorsements that TRAVELERS relies upon to try to exclude coverage. Under Florida law, the general rule for interpretation of insurance policies requires exclusionary language to be narrowly construed. State Farm Fire & Cas. Co. v. Tippett, 864 So. 2d 31, 34 (Fla. 4th DCA 2003). It is well settled that exclusionary clauses that are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured. Allstate Ins. Co. v. Shofner, 573 So. 2d 47, 49 (Fla. 1st DCA 1990).

The TRAVELERS' policy contains several conflicting exclusions and endorsements relating to coverage for "in the water" injuries. The TRAVELERS' policy originally included an Exclusion K. under "Part B: Liability Coverage" which excluded "loss of life, injury to, or illness of any person arising from swimming, snorkeling, or scuba diving or any person(s), while entering the water, exiting the water, or while in the water". However, the original Exclusion K provided an exception for "an occurrence as the result of man overboard or emergency services to the vessel."  This would appear to make sense, and accommodate negligent operation of a vessel to be covered even if the tort victim is off the vessel and in the water. Exclusion K was subsequently replaced by the "Diveboat Limitation Endorsement", referenced above, which vaguely attempts to preclude coverage for bodily injuries and loss of life of any person "in the water" or "arising as a consequence of being in the water". It is unclear what is meant by the terms "in the water" or "arising as a consequence of being in the water" in the context of this "Commercial Marine Insurance" policy, which provides coverage for ownership, operation or maintenance of a vessel being operated for the purpose of transporting snorkel or scuba passengers to and from dive sites, and for overseeing people in the water on said dives. While the

original Exclusion K made clear that the policy intended to preclude coverage for injuries and/or death arising from "scuba diving" while in the water, the replacement Exclusion K in the "Diveboat Limitation Endorsement" leaves unclear whether the policy would otherwise provide coverage for liability arising out of the operation of a scuba diving charter, resulting in the death of a passenger, such as occurred here. Simply put, it is totally ambiguous that a crewmember such as BARKLEY or a captain such as WRANOVICS, might not be insured if by their negligent operation of a vessel, a paying customer on a charter dive should be abandoned in the water and left to drown. Such an ambiguity flaws the exclusion entirely, warranting coverage. James River Ins. Co. v. Med Waste Mgmt., LLC, 46 F. Supp. 3d 1350, 1357 (S.D. Fla. 2014).

Aside from the ambiguous replacement Exclusion K set forth in the "Diveboat Limitation Endorsement", the TRAVELERS' policy also becomes muddier when it includes a non-standard form "Divemaster Limitation Endorsement". This Endorsement provides coverage for sums an insured "becomes legally obligated to pay as a result of the ownership, operation or maintenance of the insured watercraft because of liability to a Certified Divemaster and/or Dive Instructor performing diving services on behalf of you from the insured watercraft as defined under general Maritime Law". The "Divemaster Limitation Endorsement" has a $300,000 limit of liability and provides that Exclusion K is "deleted for purposes of this endorsement only" (emphasis added). The Reservation of Rights letter issued by Peter Alesi, at TRAVELERS mysteriously refers to this endorsement. See Exhibit "C" p. 5. It is unclear what is meant by "liability to a Certified Divemaster…" (emphasis added). On the one hand, this can be interpreted as coverage for liability exposure of a divemaster/instructor as a result of injuries sustained by a passenger/customer due to the operation of the insured watercraft, for which the purported "in the water" exclusion set forth under the replacement Exclusion K would not apply. On the other hand, the above referenced language can be interpreted as coverage for liability exposure of an insured for liability arising out of injuries to a divemaster/instructor as a result of operation of the vessel (i.e. Jones Act liability). This additional, hopeless ambiguity renders the TRAVELERS' policy exclusions ambiguous on their face and void. James River Ins. Co. v. Med Waste, supra.

The TRAVELERS' policy goes on to also include a "Captain and Crew Limitation Endorsement" [Form CL1] which provides coverage for sums the insured is legally obligated to pay as a result of "ownership, operation or maintenance of the insured watercraft because of liability to crew as defined in the Jones Act or under general Maritime Law." Should the Court

conclude that the "Diveboat Limitation Endorsement" applies (i.e. no coverage for any injuries to a person "while in the water"), then it would essentially nullify the coverage afforded injured crewmembers under the "Captain and Crew Limitation Endorsement" under several circumstances. For example, if a captain or crewmember were providing onboard instruction to divers and accidentally fell off the vessel and as a result of the fall, hit a propeller injuring himself in the water, the injury would technically occur "while in the water"; yet, the clear intent of the "Captain and Crew Limitation Endorsement" was to provide coverage for injuries sustained by employees, for maintenance and cure, as well as negligence or unseaworthy conditions compensable under the maritime law. The foregoing is simply one scenario which exemplifies the ambiguity raised by the "Diveboat Limitation Endorsement", coupled with all the other various "endorsements".

When the TRAVELERS' policy is read as a whole, including all provisions and endorsements attached thereto, the policy is vague and ambiguous, especially as it relates to TRAVELERS' attempt to avoid coverage for any injuries or loss of life of any person "while in the water" or "arising as a consequence of being in the water", despite other policy provisions and/or endorsements which appear to extend coverage for injuries and/or death sustained as a result of operation or ownership of the insured vessel while on the water. The ambiguity must be construed in favor of coverage and against TRAVELERS, as the drafter of the ambiguous non-standard form policy, as a matter of law. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 166 (Fla. 2003)(holding that Florida courts have consistently held that in construing insurance policies, the court should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect, and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto).

### e. TRAVELERS' Settlement Payment in the Underlying Action Constitutes a Confession of Liability, and it Cannot Contest Coverage Owed BARKLEY

TRAVELERS provided a defense to SALT 'N BLUE and WRANOVICS in the Underlying Action, pursuant to a reservation of rights. Thereafter, TRAVELERS filed a Declaratory Judgment action here, seeking a declaration that it did not owe a duty to defend or indemnify its insureds. As set forth above, after demand by BARKLEY, TRAVELERS belatedly acknowledged its defense obligations owed to BARKLEY on the eve of settlement negotiations. Notwithstanding the conditional defense offered to its insureds, and the pendency of its

Declaratory Judgment action, TRAVELERS paid a small portion of a global settlement in exchange for release of SALT 'N BLUE, WRANOVICS and BARKLEY (the acceptance of which was expressly conditioned on LLOYD'S funding a significantly larger sum being paid for "full release" of BARKLEY which LLOYD'S was forced to pay without TRAVELERS' participation despite repeated demand that it do so).

The payment made by TRAVELERS for settlement of the Underlying Action is the functional equivalent of a confession of liability and/or confession of judgment as a matter of law, because TRAVELERS ultimately provided its insureds, SALT 'N BLUE, WRANOVICS and BARKLEY precisely what TRAVELERS was contending its insureds were not entitled to in this Declaratory Judgment action.

Under Florida law, where an insurer provides a defense to its insured under a reservation of rights, and simultaneously brings a declaratory judgment action for a determination of coverage, and thereafter, settles the underlying claim on behalf of its insured, the insured is entitled to seek attorney's fees in the declaratory judgment action, pursuant to Fla.Stat. 627.428 because the insurer's payment of the claim is tantamount to a confession of judgment. O'Malley v. Nationwide Mut. Fire Ins. Co., 890 So.2d 1163 (Fla. 4th DCA 2004).

Similarly, in Wollard v. Lloyd's & Companies of Lloyd's, 439 So. 2d 217, 2018 (Fla. 1983), the insured sued the insurer on a first party claim, and the case was settled without the entry of a final judgment. For purposes of determining whether the insured was entitled to attorney's fees pursuant to Fla.Stat. 627.428, the Florida Supreme Court held that the payment of the claim was "the functional equivalent of a confession of judgment or a verdict in favor of the insured".

It follows that TRAVELERS' payment of a sum of money in exchange for release of all of its insureds, including BARKLEY, is tantamount to a confession of liability and/or confession of judgment, and thereby estops TRAVELERS from denying that it owed a duty to defend and indemnify DOUGLAS BARKLEY in the Underlying Action, entitling BARKLEY/LLOYD'S to judgment as a matter of law.

### f.   The "Other Insurance" Provisions in the LLOYD'S and TRAVELERS' Policies Call for "Pro Rata" Allocation

TRAVELERS clearly owed a duty to defend and indemnify its "additional named insured", BARKLEY, with respect to the defense and ultimate settlement of the Underlying

Action. Based on the language of the "Other Insurance" provisions set forth in the LLOYD'S and TRAVELERS' policies, TRAVELERS owed a duty to contribute toward defense and indemnity with LLOYD'S for a <u>full release</u> of the insured BARKLEY, on a pro rata basis.

The "Other Insurance" provision in the TRAVELERS' policy [D.E. 19-2] provides in relevant part:

> **OTHER INSURANCE**
> If any covered person has any other insurance against a physical damage loss covered under this policy, we will not pay for any greater proportion of the loss than our applicable amount of insurance stated on the Declarations Page bears to the total amount of insurance covering the loss. With respect to a liability, medical payments and/or uninsured boater loss, any insurance provided by this contract shall be deemed excess over all other valid and collectible insurance.

Similarly, the "Other Insurance" provision in the LLOYD'S policy [D.E. 41-1] provides in relevant part:

> <u>**CONDITIONS**</u>
> V. <u>Other Insurance</u>: If any other valid and collectible insurance is available to any **INSURED** covering a **CLAIM** also covered by this Policy, other than insurance that is specifically stated to be in excess of this Policy, the insurance afforded by this Policy shall be excess of and shall not contribute with any such other insurance. In no **event** shall this Policy be subject to the terms, conditions or limitations of any other insurance policy. If, however, it is determined that this Policy simultaneously provides coverage along with one or more other policies, the policies shall apply on a pro rata basis as determined by the limits of liability of the respective policies.

Under Florida law, where two policies contain an "other insurance" clause which states that its policy will be excess over other collectible insurance, the "other insurance" clauses in the respective policies cancel each other out, which results in apportioning the policies on a pro-rata basis determined by the policy limits in relation to the loss. <u>Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.</u>, 80 F. Supp. 3d 1311, 1320 (S.D. Fla. 2015); <u>Am. Cas. Co. of Reading Pennsylvania v. Health Care Indem., Inc.</u>, 613 F. Supp. 2d 1310 (M.D. Fla. 2009)(holding that excess "other insurance" clauses canceled each other, and thus policies both provided primary coverage for any negligence of the insured; <u>see also</u> <u>Am. Cas. Co. of Reading Pennsylvania v. Health Care Indem., Inc.</u>, 613 F. Supp. 2d 1310, 1319 (M.D. Fla. 2009)(declining to distinguish between two primary policies with similar "other insurance" clauses on the basis that one policy was "super excess" to the other and holding that "Florida law does not recognize a 'super excess' other insurance clause").

*Motion for Final Summary Judgment*
**CASE NO. 0:16-cv-61768**

Based on the "Other Insurance" provisions contained in the TRAVELERS and LLOYD'S policies, they are mutually repugnant and therefore cancel each other out. As such, *pro rata* allocation of the limits of liability ($1,000,000 with TRAVELERS and $1,000,000 with LLOYD'S) is required under Florida law.   The Court should order that TRAVELERS is obligated to BARKLEY/LLOYD'S for 50% of the defense costs and indemnity payment made by LLOYD'S for the <u>full release</u> of the insured BARKLEY, for ultimate entry of a monetary judgment against TRAVELERS.  It is respectfully requested that the Court view amounts sought *in camera* to preserve confidentiality, to enter Final Judgment once coverage is determined.

## CONCLUSION

DOUGLAS BARKLEY, individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4020, Ark Underwriting, Inc., as assignee of his transfer of interest is entitled to reimbursement for the pro rata share (50%) of defense fees and costs incurred by LLOYD'S in its defense of BARKLEY, and of the settlement paid by LLOYD'S on behalf of BARKLEY in the Underlying Action.

WHEREFORE, Defendant/Counter-Plaintiff, DOUGLAS BARKLEY, individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4020, Ark Underwriting, Inc., as assignee of his transfer of interest, respectfully request this Court grant this Motion for Final Summary Judgment against the Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, enter Final Judgment (after *in camera* review of the amount of money at issue) in favor of BARKLEY and award such other relief as this Court deems just and proper, including attorney's fees as it relates to the subject Declaratory Judgment action.

## REQUEST FOR HEARING

Defendant/Counter-Plaintiff, DOUGLAS BARKLEY, individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4020, Ark Underwriting, Inc., as assignee of his transfer of interest, respectfully request the Court schedule a hearing on its Motion for Final Summary Judgment, as it will assist the Court in understanding the inter-relation between the policies and the separately insured risks that each policy provides to its insureds. Defendant/Counter-Plaintiff estimates a hearing on this matter would take approximately one (1) hour.

Dated: May 30, 2017

**MCINTOSH SAWRAN & CARTAYA, P.A.** • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304

TELEPHONE (954) 765-1001                   FACSIMILE (954) 765-1005

*Motion for Final Summary Judgment*
**CASE NO. 0:16-cv-61768**

Respectfully submitted,

*/s/Douglas M. McIntosh*
DOUGLAS M. MCINTOSH
Florida Bar No.: 325597
dmcintosh@mscesq.com
**ILANA B. OLMAN**
Florida Bar No.: 106066
iolman@mscesq.com
McIntosh, Sawran & Cartaya, P.A.
1776 East Sunrise Boulevard
P.O. Box 7990
Fort Lauderdale, Florida 33338-7990
Telephone:             (954) 765-1001
Facsimile:             (954) 765-1005
*Attorneys for Defendant/Counter-Plaintiff, Douglas Barkley, for the use and benefit of Certain Underwriters at Lloyd's London*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a correct copy hereof has been furnished to: Michael E. Conroy, Esq., mconroy@mcalpinconroy.com, bvelazquez@mcalpinconroy.com, Kassandra Doyle Taylor, Esq., ktaylor@mcalpinconroy.com, atoledo@mcalpinconroy.com, McALPIN CONROY, Brickell BayView Centre, 80 S.W. 8th Street, Suite 2805, Miami, FL 33130, Telephone: (305) 810-5417, Facsimile: (305) 810-5401, by CM/ECF on this 30th day of May, 2017

*/s/Douglas M. McIntosh*
DOUGLAS M. MCINTOSH
Florida Bar No.: 325597
dmcintosh@mscesq.com
ILANA B. OLMAN
Florida Bar No.: 106066
iolman@mscesq.com