UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF FLORIDA

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

Plaintiff

vs.

DOUGLAS BARKLEY,

Defendant.
_____

DOUGLAS BARKLEY,

Counter-Plaintiff,

vs.

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

Counter-Defendant.
_____/

CASE NO.  0:16-cv-61768-CIV-
ALTONAGA/O'SULLIVAN

**DEFENDANT/COUNTER-PLAINTIFF, DOUGLAS BARKLEY'S RESPONSE IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff, DOUGLAS BARKLEY [individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4020, Ark Underwriting, Inc., as assignee of his transfer of interest (hereinafter "BARKLEY" or "LLOYD'S" or "BARKLEY/LLOYD'S" or "Defendant/Counter-Plaintiff")], by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Southern District of Florida, Local Rule 7.1, hereby files its Response in Opposition to Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S (hereinafter "TRAVELERS"), Motion for Summary Judgment (D.E. 94), and states as follows:

## **MEMORANDUM OF LAW**

**I.   Travelers' Theory of "Two Complimentary Policies of Insurance" Fails as a Matter of Law**

As a preliminary matter, TRAVELERS argues that its policy should be construed in unison with the LLOYD'S policy, because the LLOYD'S policy was allegedly intended to exclusively provide coverage for "in water" incidents, while the TRAVELERS policy was allegedly intended to respond solely to incidents on the vessel. TRAVELERS ignores its own corporate representative admissions on coverage. While TRAVELERS' may have "intended" to preclude coverage for any incident which results in injury or death of a participant "in the water", without consideration of the proximate cause which lead to the injury or death, the language in the exclusionary clause relied upon by TRAVELERS simply does not support this conclusion, as acknowledged by its own representatives.

Travis Ochowicz, the Managing Director for Ocean Marine Claims in Travelers Underwriting Department, who was designated as one of TRAVELERS' corporate representatives in this case <u>admitted</u> that the TRAVELERS policy **does provide coverage for injuries and/or death which occur in the water**. Specifically, the following questions were posed:

> Q.   So let's assume that you have 15 passengers on the Scubatyme and they're all going out to dive.  And let's assume that the allegations in the complaint were true, that Mr. Barkley was acting as a divemaster instructor for that dive.
> A.   Yes.
> Q.   Let's assume further that the captain negligently operates the vessel when the people are trying to disembark the boat to go diving, and instead of putting it in forward, throws it in reverse, pitches people overboard, runs them over with the engines and chops them to pieces.
> \*\*\*
> Q.     Who has coverage when the captain runs over those passengers?
> MR. CONROY:  Objection as to form.
> THE WITNESS:  With respect to him going into reverse and people going overboard?
> BY MR. MCINTOSH:
> Q.   And getting killed or maimed **in the water**. Yes, sir.
> MR. CONROY:  Objection to form.
> **THE WITNESS:   Because they're going overboard and the captain is negligent, I would say the captain is.**

> BY MR. MCINTOSH:
> Q. All right. **So your policy would answer for that negligence?**
> MR. CONROY: Objection as to form.
> **THE WITNESS: Yes. If he's covered as a crewmember on the policy, yes, our policy would respond.**
> BY MR. MCINTOSH:
> **Q. For the in the water bodily injury or death of the person, correct?**
> MR. CONROY: Objection as to form.
> **THE WITNESS: Yes.**

See Travis Ochowicz Dep., 172:19-174:14, May 31, 2017, excerpts attached hereto as Exhibit "A". (Emphasis added).

Mr. Ochowicz was also asked the following:

> Q. Okay. And if there -- if the vessel goes out with 15 passengers, and they all go in the water and enjoy their scuba trip, and they get back on board and the captain miscounts and counts 14 heads -- counts 15 heads, when there's only 14 heads, and **leaves somebody in the water and that person drowns**, is -- does your policy provide coverage for that master's negligence?
> MR. CONROY: Objection as to form.
> THE WITNESS: If he leaves them in the -- if he leaves them in the water?
> BY MR. MCINTOSH:
> Q. Yes, sir.
> MR. CONROY: Objection as to form.
> THE WITNESS: There's a waiver, that's applicable on this policy, for in water activities for the passengers.
> BY MR. MCINTOSH:
> Q. Oh, I understand.
> **A. But -- but as far as a captain or crewmember -- crewmember's negligence, our crew coverage would pick that up, yes.**
> MR. CONROY: Objection as to form.
> BY MR. MCINTOSH:
> Q. So there would be coverage for the negligent act of the captain in that instance, miscounting and **leaving a person in the water by accident** --
> MR. CONROY: Objection as to form.
> BY MR. MCINTOSH:
> Q. -- under your coverage grant?
> MR. CONROY: Objection as to form.
> BY MR. MCINTOSH:
> Q. Right?

**A. Yes.**

See Ochowicz Dep., 149:19-151:3, Exhibit "A". (Emphasis added).

Similarly, Mark Smieya, the Manager of Ocean Marine Claims for Travelers testified in his deposition as follows:

> Q. But that doesn't answer my question with all respect. My question is: Are you saying as the company representative with the most knowledge about the Travelers policy that there is a possibility with the right circumstances and events that you could have coverage for a passenger on the vessel from a head injury that they incurred because of negligent operation of the vessel but who then fell into the water and drowned and you'd cut the coverage off and say, but I'm not paying for the death, I'm only paying for the bump on the head?
> MR. CONROY: Objection as to form. Asked and answered.
> THE WITNESS: We'd have to look at the circumstances of the loss and how the injury caused allegedly the death.
> BY MR. MCINTOSH:
> Q. Again, **there is a possibility there could be coverage under that hypothetical under your policy?**
> **A. Yes.**

See Mark Smieya Dep., 256:11-257:6, Exhibit "B". (Emphasis added).

Underwriter Travis Ochowicz also testified under oath that the named insured under the TRAVELERS policy paid an extra premium of $1,500 for crew member in the water coverage. Mr. Ochowicz testified as follows:

> Q. Okay. I was going to get to that, but we might as well go there now. There's a category "Crew/CHG." Is that for charge?
> A. Yes.
> Q. $1,500?
> A. Correct.
> Q. And then, somebody wrote "two crew" -- what does it say?
> A. "On deck."
> Q. "On deck/1 crew in water"?
> A. Correct.
> Q. What does that mean, "1 crew in water"?
> **A. The crewmember would -- would be in the water.**
> **Q. In the water, i.e. with divers?**
> **A. Yes.**

**Q.   Okay.  So your company quoted through Charter Lakes a $1,500 surcharge for coverage for one crewmember diving in the water with divers on board the dive boat?**
**A.   Yeah.  The crewmember would actually be in the water assisting the divers.**
Q.   In the capacity as an instructor or divemaster or in the capacity as a crewmember?
A.   In the capacity -- I can't guess on that. I mean, I don't know the answer to that question.
Q.   Well, does your -- does your policy provide coverage for P&I, protection and indemnity coverage, for one crewmember in the water on board the Scubatyme III when this policy was written?
A.   Yes.

\*\*\*

Q.   Let's refer instead to the policy declarations page of the policy. You would agree with me, wouldn't you, that the declarations page that you issued to your insured or in this instance that Charter Lakes, with the power of the pen for Travelers, issues to its insured is required to delineate the coverages provided and the premium charge for those coverages? Would you agree with that?
MR. CONROY:  Objection to form.
THE WITNESS:  I would agree.
BY MR. MCINTOSH:
Q.   That's what a declarations page is meant to do is to declare the coverages and to advise the insured of the premium that's being charged for those coverages, correct?
A.   Correct.
MR. CONROY:  Objection to form.
BY MR. MCINTOSH:
Q.   And looking at Exhibit – Composite Exhibit 3, the declaration page of the policy shows coverages with amounts of insurance and the premium for those coverages, right?
A.   Yes.
Q.   And then, it refers at the last section to endorsements.  And it shows a figure of $1,500 in additional premium being charged to Salt 'N Blue for endorsements, correct?
A.   Correct.
Q.   And the endorsements on the proposal from Charter Lakes, who has the power of the pen for your company, was for crew liability, one crew, and divemaster and one crew in the water, correct?
A.   Correct.
**Q.   And that coincides with the quote on Travelers page 204 for $1,500 in handwriting for "2 crew on deck/1 crew in water," correct?**
**A.   Correct.**

> **Q.   So your company, through Charter Lakes, with the power of the pen for Travelers, charged $1,500 in extra premium to Salt 'N Blue, LLC for divemaster one crew in the water coverage; is that accurate?**
> **A.   Yes.**

See Ochowicz Dep., 115:2-116:8 and 125:3-126:21, Exhibit "A". (Emphasis added).

The foregoing testimony irrefutably establishes that the TRAVELERS policy <u>does</u> provide coverage for in-the-water injuries and/or death arising from negligent operation of the vessel, for which an extra premium was charged, notwithstanding the purported overbroad exclusion. <u>See</u> Affidavit of Expert, Bernd Heinze, Esq., attached hereto as Exhibit "C".

Further, TRAVELERS theory of "Complimentary Policies" is misguided, in that TRAVELERS asserts that its policy is clear and unambiguous on the one hand, while it simultaneously asks the Court to consider the interaction between the TRAVELERS policy and an entirely separate policy (issued by LLOYDS) on the other hand, in an attempt to give clarity to the construction and interpretation of TRAVELERS' exclusionary clause in the "Diveboat Limitation Endorsement". Under Florida law, if the relevant insurance policy language is clear and unambiguous, a court must infer the parties' intent from its plain language, <u>not from extrinsic evidence</u>. See <u>Key v. Allstate Ins. Co.</u>, 90 F.3d 1546, 1549 (11th Cir. 1996)(explaining that if the terms of an insurance contract are clear and unambiguous, the court should not resort to outside evidence or the complex rules of construction to construe the contract, because terms of a contract provide the best evidence of the parties' intent).

TRAVELERS' attempt to rely on extrinsic evidence (i.e. the "complimentary" LLOYD's policy) to establish the duties and obligations owed by TRAVELERS under its policy, is improper because 1) if the policy is unambiguous, TRAVELERS may not rely on outside evidence; and 2) if TRAVELERS must rely upon extraneous evidence, then the policy is clearly ambiguous, and must be construed in favor of the insured (i.e. BARKLEY). <u>See</u> <u>Fireman's Fund Ins. Co. v. Vordermeier</u>, 415 So. 2d 1347, 1350 (Fla. 4th DCA 1982).

## II. The Incident Occurred as "a Result of the Ownership, Operation, or Maintenance of the Insured Vessel"

Throughout its Motion for Summary Judgment, TRAVELERS makes the unsubstantiated assertion that "neither the allegations in the Underlying Litigation, nor the in-the-water death have anything to do with the ownership, operation, or maintenance of the Insured Vessel". The

6

**MCINTOSH SAWRAN & CARTAYA, P.A.** • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001          FACSIMILE (954) 765-1005

foregoing wholly ignores the allegations set forth in the Underlying Complaint and discovery adduced in the Underlying Litigation. In fact, TRAVELERS cites to the following allegations from the Underlying complaint in its own Motion for Summary Judgment, which on its face, demonstrates that the death of Joseph Grosso was, at least in part, occasioned as a "result of" the ownership and operation of the M/V Scubatyme, III. For example, TRAVELERS cites to the following allegations in its Motion for Summary Judgment:

> The Insured Vessel **motored away** from Grosso's location to pick up other emerging divers and then returned to Grosso's location in the water. [D.E. 19, ¶ 18; D.E. 48, ¶18]. (Emphasis added).
>
> ***
>
> By **operation of the vessel** in abandoning the dive site and leaving Grosso in the water [D.E. 19-1, ¶76(b)].
> (Emphasis added).

The complaint in the Underlying Litigation also alleged that at all times material to the subject incident (i.e. the drowning death of Joseph Grosso), "SALT 'N BLUE, LLC was **operating** the M/V Scubatyme III in the traditional maritime activity of transporting passengers to and from a scuba dive site, diving activities aboard the M/V Scubatyme, III for the specific purpose of hunting lobsters during the lobster mini-season for commercial gain" [D.E. 19-1; ¶17]. (Emphasis added).

The Underlying complaint further alleged that permission was granted by a crewman or crewmen of the M/V Scubatyme III to do a "bounce dive", without checking or inquiring as to the amount of air remaining in Joseph Grosso's tank [D.E. 19-1, ¶24]. According to the Underlying complaint, Salt 'N Blue (as owner and operator of the insured vessel, *M/V Scubatyme III*), Wranovics (as captain) and BARKLEY (as a crewmember) breached their duty of reasonable care for the safety of Joseph Grosso and were negligent and/or grossly negligent "by the **operation of the vessel** in abandoning the dive site and leaving Joseph P. Grosso alone in the water, without a 'dive buddy', for approximately 20 minutes, to collect the rest of the divers, instead of waiting for him to complete the short 'bounce' dive that he was instructed to perform" [D.E. 19-1; ¶ 35(b), 45(b), 55(b), 66(b), 76(b), and 87(b)]. (Emphasis added).

In an attempt to get around the insuring agreement in the TRAVELERS policy which provides coverage for liability arising out of operation of a vessel, TRAVELERS seeks to invoke

7

MCINTOSH SAWRAN & CARTAYA, P.A. • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001          FACSIMILE (954) 765-1005

a "physical situs" requirement to argue that Joseph Grosso's death did not occur as a result of operation of the vessel because his actual death did not occur <u>on the vessel</u>. See TRAVELERS' Motion for Summary Judgment at D.E. 94; pp. 14 of 20. TRAVELERS' argument fails for a number of reasons. First, the TRAVELERS policy simply does not have a "physical situs" requirement within it. The policy provides coverage for sums an insured is legally obligated to pay "as a result of the ownership, operation or maintenance of the insured vessel because of…bodily injury or loss of life".[1] There is no reference in the policy whatsoever that the injuries sustained or loss of life must occur <u>on the vessel</u>. Second, assuming *arguendo* the TRAVELERS policy did have a "physical situs" requirement, then this would contradict the testimony of TRAVELERS' corporate representative, Underwriter Travis Ochowicz who testified that the TRAVELERS policy would provide coverage for the in-the-water death of a passenger who was abandoned in the water as a result of miscounting the number of passengers who boarded the vessel following a scuba dive, and subsequently drowned <u>in the water</u>. See Ochowicz Dep., <u>supra</u>, at 149:19-151:3, exhibit "A".

It is without question that there is a nexus and causal relationship between the operation and ownership of the insured vessel and Joseph Grosso's death, which gave rise to the Underlying Litigation. <u>See</u> <u>Westmoreland v. Lumbermens Mut. Cas. Co.</u>, 704 So. 2d 176, 185 (Fla. 4th DCA 1997)(explaining broad construction of the phrase "arising out of" the use, operation or ownership of a motor vehicle in the insuring clause of a policy requires a nexus or causal relationship between use or operation or ownership of the vehicle and injuries giving rise to the suit, in order to activate coverage). Here, Joseph Grosso's death occurred as a proximate result of ownership and/or operation of the charter scuba vessel in negligently operating the

---

[1] It is worth noting that there are diveboat liability policies which do include a "physical situs" requirement in their policies. For example, a standard policy exclusion often used in diveboat liability policies issued to PADI (Professional Association of Diving Instructors) members provides the following:

> For any claims for Bodily Injury or Death occurring anywhere other than actually on board the insured Vessel or the insured Vessel's dive platform or boarding ladder. In no event does this policy extend to or provide coverage for any claims for Personal Injury or Death for any person(s) actually in the water, or while under the supervision of a Divemaster, Dive Instructor or Assistant Dive Instructor, or engaged in water sports of any nature, including but not limited to water skiing, aquaplaning, parasailing, scuba diving, snorkeling or operating a jet ski or similar craft.

[Excerpt from form number "PADI MARINE 07/12", attached hereto as exhibit "D"].

Simply stated, TRAVELERS could have included language in its policy which clearly and unambiguously incorporated a "physical situs" requirement, but chose not to do so.

8

**MCINTOSH SAWRAN & CARTAYA, P.A.** • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001     FACSIMILE (954) 765-1005

vessel by abandoning the dive site and leaving Joseph Grosso alone in the water, without a dive buddy. TRAVELERS has simply turned a blind eye to these undisputed facts. See Affidavit of Expert, Bernd Heinze, Esq., Exhibit "C".

### III. TRAVELERS Owed a Duty to Defend and Indemnify BARKLEY

TRAVELERS argues in its Motion for Summary Judgment that it did not have a duty to defend BARKLEY because of the TRAVELERS' policy's "clear exclusion" for the loss of life to persons "in the water". TRAVELERS' argument is without merit. As indicated above, it is undisputed that BARKLEY qualified as an additional named insured under the TRAVELERS policy, and the allegations set forth in the Underlying complaint clearly alleged liability arising out of the operation of the M/V ScubaTyme. TRAVELERS argues that the fact that Joseph Grosso died "in the water" is the "gravamen of the Underlying Litigation" and should foreclose any further inquiry as to TRAVELERS obligations owed to BARKLEY. This position essentially asks the Court to ignore the fact that TRAVELERS provided a defense to the captain of the vessel (Wranovics) from inception of the claim (pre-suit) through settlement, under the exact same coverage grant for captain and crewmembers, for which BARKLEY was also entitled to a defense and indemnity. See Nova Cas. Co. v. OneBeacon Am. Ins. Co., 603 Fed. Appx. 898, 901 (11th Cir. 2015)(citing Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16, 21 (Fla. 4th Dist.Ct.App.2006)(explaining if an insurance company has more than one insured, it owes a duty to act in good faith towards both or all of its insureds).

TRAVELERS has also admitted that BARKLEY qualified as an additional named insured under its policy and was entitled to a defense. For example, TRAVELERS conceded in its letter dated October 5, 2016 from Peter Alesi, Senior Technical Specialist for TRAVELERS that "Mr. Barkley is qualified as an additional named insured under the Policy for this incident". [D.E. 95-3]. Further, TRAVELERS retained Donna E. Albert, Esq. to represent the TRAVELERS' insureds. On March 20, 2015 (prior to the filing of the Underlying Complaint), attorney Albert sent a letter to a predecessor law firm representing the Grosso Estate, advising "the undersigned represents Salt 'N Blue, LLC as well as the vessel and its crew". See Letter from Donna E. Albert, Esq. to Michael R. Kaufman, Esq. dated March 20, 2015. [D.E. 95-1]. It is without question that TRAVELERS recognized its duty owed to BARKLEY from inception, yet failed to execute its good faith obligation owed to BARKLEY, to defend him.

Under Florida law, the central inquiry in a duty to defend case is whether the complaint alleges facts that fairly and potentially bring the suit within policy coverage. See Hartford Acc. & Indem. Co. v. Beaver, 466 F.3d 1289, 1292 (11th Cir. 2006). Florida's courts have uniformly said that a suit alleging facts that <u>fairly and potentially</u> bring the suit within policy coverage triggers an insurer's duty to defend. Id at 1293. (Emphasis added). "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 814 (Fla. 1st DCA 1985). It is equally well-settled that coverage clauses are construed broadly, while exclusions are construed narrowly, to affect the greatest extent of coverage. See Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So. 2d 565, 568 (Fla. 2d DCA 1984); See also Demshar v. AAACon Auto Transport, Inc., 337 So.2d 963, 965 (Fla.1976)("Exclusionary clauses in liability insurance policies are always strictly construed").

Here, there was more than enough doubt concerning the enforceability and applicability of the purported "in water" exclusion, which must be narrowly construed to affect the greatest extent of coverage, in favor of BARKLEY. The TRAVELERS policy is ambiguous, in that the policy contains several conflicting exclusions and endorsements relating to coverage for "in the water" injuries. As noted in TRAVELERS' Motion for Summary Judgment, the TRAVELERS' policy originally included an Exclusion K. under "Part B: Liability Coverage" which excluded "loss of life, injury to, or illness of any person arising from swimming, snorkeling, or scuba diving or any person(s), while entering the water, exiting the water, or while in the water". However, the original Exclusion K provided an exception for "an occurrence as the result of man overboard or emergency services to the vessel." While the original Exclusion K made clear that the policy intended to preclude coverage for injuries and/or death arising from "scuba diving" while in the water, the replacement Exclusion K in the "Diveboat Limitation Endorsement" leaves unclear whether the policy would otherwise provide coverage for liability arising out of the negligent operation of a scuba diving charter vessel, resulting in the death of a passenger, such as occurred here. As such, it is totally ambiguous that a crewmember such as BARKLEY or a captain such as Wranovics, might not be insured if by their negligent operation of a vessel, a paying customer on a charter dive should be abandoned in the water and left to drown. Such an ambiguity flaws the exclusion entirely, warranting coverage. James River Ins. Co. v. Med Waste

**MCINTOSH SAWRAN & CARTAYA, P.A.** • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001                FACSIMILE (954) 765-1005

Mgmt., LLC, 46 F. Supp. 3d 1350, 1357 (S.D. Fla. 2014)(explaining that ambiguous provisions and exclusions are interpreted against the insurer and in favor of the insured).

TRAVELERS cites to two U.S. District Court opinions out of Hawaii and Puerto Rico to argue that the "in water" exclusion in the TRAVELERS policy is clear and unambiguous. Both of these cases are distinguishable from the facts and policy provisions at issue here. First, TRAVELERS relies on the unreported decision styled Sphere Drake Ins. PLC v. Fun Charters, Inc., CIV-96-00667 HG, 1997 WL 1065503 (D. Haw. June 26, 1997), aff'd, 165 F.3d 918 (9th Cir. 1998), where the court held that an "in water" exclusion set forth in a "Watersports Activity Amendatory Endorsement" precluded coverage for the death of a snorkeler. TRAVELERS only cites to a small portion of the exclusion in Sphere to argue that the policy exclusion is "similar to the one contained in the Travelers' Policy at issue", when in fact the endorsement read in its entirety includes a much more clear and succinct exclusion:

> Persons participating in any in water sports activity including but not limited to scuba diving, snorkeling, surface diving and swimming are covered only as Passengers and only while aboard the Vessel. We do not provide coverage for any person for Bodily Injury or Property Damage while in the water, entering or exiting the water in connection with any in water sports activity…

Id. at *6.

It is important to note that the exclusion in Sphere specifically excludes all liability for accidents arising out of injuries to persons participating in water sports activities. By contrast, TRAVELERS' "in water" exclusion set forth in the Diveboat Limitation Endorsement does not make any reference to activities, such as scuba diving and/or snorkeling, while the original exclusion K, which was subsequently replaced by the Diveboat Limitation Endorsement originally excluded loss of life arising from "swimming, snorkeling, or scuba diving." See TRAVELERS' policy at D.E. 1-2, pp. 10 and 21 of 22. In addition to this significant distinction, the Waterspots Endorsement in Sphere also included a "physical situs" requirement (i.e. "covered only as Passengers and only while aboard the Vessel"), whereas the TRAVELERS policy does not include such a requirement. In Sphere the court also noted that "irrespective of the validity of the Watersports Endorsement" the policy contained a "Watersports Exclusion" in the text of the policy itself, which would, by itself, "negate any coverage for the Incident". Id. *8 and Footnote 4. As such, the court held that there were two applicable exclusions which clearly and unambiguously precluded coverage. Sphere is also distinguishable in that there is no

11

MCINTOSH SAWRAN & CARTAYA, P.A. • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001            FACSIMILE (954) 765-1005

indication in the opinion that there was any allegation concerning operational negligence of the vessel, as we have here.

Similarly, in the second case relied upon by TRAVELERS, <u>Sylva v. Culebra Dive Shop</u>, 389 F. Supp. 2d 189 (D.P.R. 2005), the court construed an entirely different exclusion from the exclusion in the TRAVELERS policy, which provided in bold type font, that "[p]ersons participating in any Diving activity are covered only as passengers and only while aboard the Vessel, or the Vessel's diving platform on the Vessel's boarding ladder." <u>Id.</u> at 202. The court in <u>Sylva</u> noted that the policy also included an exclusion for "bodily injury…while in the water in connection with any diving activity, or as a consequence of any diving activity". <u>Id.</u> Again, the policy involved in <u>Sylva</u> clearly excluded coverage for injuries sustained in connection with <u>any diving activities</u> and specifically included a "physical situs" requirement for coverage, whereas the <u>TRAVELERS policy does not</u>. Simply stated, the policies at issue in <u>Sphere</u> and <u>Sylva</u> cannot be compared to the overbroad and ambiguous "in water" exclusion in the TRAVELERS policy.

Aside from the obvious ambiguity in the Diveboat Limitation Endorsement, application of the "in water" exclusion in the TRAVELERS policy would render the policy illusory, leaving the insured(s) to question, *what does this policy cover?* The TRAVELERS policy purports to insure for liability for bodily injury and death as a result of negligent operation of the M/V Scubatyme III in the traditional maritime activity of transporting charter passengers to and from a scuba dive site, giving general and specific dive briefings and supervising all diving activities aboard the M/V Scubatyme, III, for which an extra premium was charged for a crew member providing dive instruction "in the water". The policy then attempts to broadly exclude liability for bodily injury and death to "any person while in the water or as a consequence of being in the water". The TRAVELERS' policy insures for, <u>tort liability for accidents which occur as a result of the operation of the M/V Scubatyme III in performance of its dive charters</u>. See TRAVELERS' policy at D.E. 1-2, pp. 6 and 10 of 22, defining "Who Is Insured by This Policy" to include crewmember(s) "with regard to a Commercial Venture", which means "any time the insured vessel is used to carry passengers who have agreed to pay to be on the vessel…[and] includes any time the insured vessel is being operated by a captain or crewmember to prepare for such a trip". If TRAVELERS is correct and its policy is read to take away the coverage it provides because the injured party is in the water at the time of his or her injury, it becomes

12

MCINTOSH SAWRAN & CARTAYA, P.A. • ATTORNEYS AT LAW • 1776 EAST SUNRISE BLVD • FORT LAUDERDALE, FL 33304
TELEPHONE (954) 765-1001            FACSIMILE (954) 765-1005

illusory because the limitation/Exclusion K completely swallows up the insuring agreement amounting to the truest form of ambiguity. See Purrelli v. State Farm Fire and Cas. Co., 698 So.2d 618, 619 (Fla. 2d DCA 1997)(holding that a policy that "purports to insure invasion of privacy, an intentional tort, but excludes acts 'intended' by the insured and limits coverage to 'accidents'" was illusory and the insurer was liable; "the limitation and exclusion completely swallowed up the insuring provision creating the 'grossest form of ambiguity.'")

If the foregoing was not enough, TRAVELERS own corporate representatives testified that the policy does provide coverage for in-the-water injuries and/or death, notwithstanding the overbroad "in water" exclusion in the "Diveboat Limitation Endorsement". It is without question that TRAVELERS owed a duty to defend BARKLEY in the Underlying Litigation, and its purported "in water" exclusion did not excuse TRAVELERS from said obligation, as the policy in fact provides coverage for in-the-water injuries and/or death. It follows that TRAVELERS also owed a duty to indemnify BARKLEY, by participating with LLOYD'S for a full release of its insured, on a *pro rata* basis. See Affidavit of Expert, Bernd Heinze, Esq., Exhibit "C"; see also BARKLEY/LLOYD'S Motion for Final Summary Judgment, D.E. 95, pp. 18-19.

It is "well-settled law that, when an insurer…refuses to defend, the insurer transfers to the insured the power to conduct its own defense, and if it is later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of the insured's litigation costs." BellSouth Telecommunications, Inc. v. Church & Tower of Fla., Inc., 930 So. 2d 668, 670-71 (Fla. 3d DCA 2006). If an insurer breaches its contractual duty to defend it will be held "liable for all damages naturally flowing from the breach." Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n, 483 So. 2d 513, 516 (Fla. 3d DCA 1986). As such, TRAVELERS not only owed a duty to defend and indemnify BARKLEY/LLOYD'S for its *pro rata* share, but also owes a duty to reimburse BARKLEY/LLOYD'S for all damages flowing from its breach (i.e. the defense fees and costs incurred in BARKLEY/LLOYD'S defense and prosecution of this subject Declaratory Judgment action).

**IV.  TRAVELERS' Demand for Reimbursement from BARKLEY/LLOYD'S is Without Merit**

TRAVELERS argues in its Motion for Summary Judgment that LLOYD'S should be required to reimburse TRAVELERS for the costs and expenses incurred by TRAVELERS in the defense and indemnification of Salt 'B Blue in the Underlying Litigation, because Salt 'N Blue

qualified as an insured under the LLOYD'S policy. This argument serves as nothing more than a distraction from the actual pleadings and issues in this case.

TRAVELERS has not pled any entitlement to recover sums incurred in the defense of Salt 'N Blue in the Underlying Litigation, with the exception of the following Affirmative Defense:

> 7. TRAVELERS alleges that if it is determined to be obligated to contribute to Lloyd's voluntary payment, then it is similarly entitled to an offset or credit for the costs and expenses which Lloyd's should have incurred for a proportionate share of the costs of defending Salt 'N Blue, LLC.

See TRAVELERS' Answer and Affirmative Defenses to BARKLEY/LLOYD'S Counterclaim [D.E. 59].

Based on the foregoing, it is evident that TRAVELERS has only pled entitlement to an "offset or credit" for the costs and expense incurred in defense of Salt 'N Blue, LLC, *if* it is determined that TRAVELERS owes a duty to contribute toward LLOYD'S indemnity payment on behalf of BARKLEY. At present, TRAVELERS denies any such duty.

To the extent that LLOYD'S owed a concomitant duty to defend Salt 'N Blue, LLC, TRAVELERS is not entitled to a set-off for fees incurred by TRAVELERS prior to the filing of the Underlying complaint, based upon the clear terms of the LLOYD'S policy [D.E. 48-1]. The "Defense, Settlement, Supplementary Payments" section of the Lloyd's Policy provides that Lloyd's has a duty to "defend any CLAIM against the INSURED". Under "Additional Definitions" the Lloyd's policy defines "CLAIM(s)" as "a written demand for DAMAGES received by an INSURED." Based on the foregoing policy terms, it is without question that LLOYD'S does not owe a duty to defend any insured under its policy until a written demand is presented and/or a complaint is filed. To the extent TRAVELERS is entitled to a set-off, it is limited to only those fees incurred in the defense of Salt 'N Blue once the Underlying complaint was filed (i.e. on or about March 1, 2016) and then, only to be set off from amounts owed by TRAVELERS to BARKLEY/LLOYD'S for its breach of its policy and duty to defend. See Affidavit of Expert, Bernd Heinze, Esq., Exhibit "C".

## CONCLUSION

Based on the foregoing, TRAVELERS has failed to make the requisite showing that it did not owe a duty to defend and indemnify its additional named insured, BARKLEY, under the terms of its insurance policy, as (1) the allegations set forth in the Underlying complaint clearly triggered a duty to defend BARKLEY from inception, for the alleged negligent "operation of the vessel" as a proximate cause of Joseph Grosso's death; (2) TRAVELERS' corporate representatives <u>admitted</u> that TRAVELERS policy <u>does</u> provide coverage for in-the-water injuries and/or death, notwithstanding the overbroad "in water" exclusion relied upon by TRAVELERS in order to attempt to evade its duties owed to BARKLEY under the policy; and (3) TRAVELERS has failed to make the requisite showing that its "in water" exclusion is clear and unambiguous, such that there is <u>no doubt</u> as to its applicability under the facts presented in the Underlying Litigation.

WHEREFORE, Defendant/Counter-Plaintiff, DOUGLAS BARKLEY, individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4020, Ark Underwriting, Inc., as assignee of his transfer of interest, respectfully request this Court enter an order denying TRAVELERS Motion for Summary Judgment, and granting BARKLEY/LLOYD'S Motion for Final Summary Judgment (D.E. 95), and award such other relief as this Court deems just and proper, including reimbursement to LLOYD'S for TRAVELERS' *pro rata* share of the defense and indemnity expenses paid for BARKLEY, and attorney's fees in favor BARKLEY/LLOYD'S and against TRAVELERS as it relates to the subject Declaratory Judgment action.

Dated: June 23, 2017

    Respectfully submitted,

    */s/Ilana B. Olman*_____
    DOUGLAS M. MCINTOSH
    Florida Bar No.: 325597
    dmcintosh@mscesq.com
    ILANA B. OLMAN
    Florida Bar No.: 106066
    iolman@mscesq.com
    McIntosh, Sawran & Cartaya, P.A.
    1776 East Sunrise Boulevard
    P.O. Box 7990
    Fort Lauderdale, Florida 33338-7990
    Telephone:    (954) 765-1001
    Facsimile:    (954) 765-1005

*Attorneys for Defendant/Counter-Plaintiff, Douglas Barkley, individually and for the use and benefit of Certain Underwriters at Lloyd's London*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a correct copy hereof has been furnished to: Michael E. Conroy, Esq., mconroy@mcalpinconroy.com, bvelazquez@mcalpinconroy.com, Kassandra Doyle Taylor, Esq., ktaylor@mcalpinconroy.com, atoledo@mcalpinconroy.com, McALPIN CONROY, Brickell BayView Centre, 80 S.W. 8th Street, Suite 2805, Miami, FL 33130, Telephone: (305) 810-5417, Facsimile: (305) 810-5401, by CM/ECF on this 23rd day of June, 2017

/s/Ilana B. Olman_____
DOUGLAS M. MCINTOSH
Florida Bar No.: 325597
dmcintosh@mscesq.com
ILANA B. OLMAN
Florida Bar No.: 106066
iolman@mscesq.com