UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 16-61768-CIV-ALTONAGA/O'Sullivan

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiff/Counter-Defendant,

v.

DOUGLAS BARKLEY, individually and for the use and benefit of Certain Underwriters at Lloyd's, Syndicate 4420, Ark Underwriting, Inc., as assignee of his transfer of interest

Defendant/Counter-Plaintiff.
_____________________________________/

**TRAVELERS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Comes now,** Plaintiff/Counter-Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers"), hereby files its reply in support of its motion for summary judgment and states:

**Summary of the Motions for Summary Judgment**

The facts of the Underlying Litigation and main issues for resolution by this Court are relatively straightforward. On July 30, 2014, decedent Joseph Grosso drowned during a scuba diving trip. He was found unresponsive underwater and efforts to resuscitate him were futile. The Underlying Litigation ensued and, ultimately, the case was settled in October 2016. In settling the matter, Lloyd's paid the full policy limits for its policy and Travelers' paid less than its policy limits.

In the interim, Travelers instituted this declaratory action, which was initiated on July 22, 2016. [D.E. 1] Now, both Travelers and Lloyd's have filed motions for summary judgment. Travelers argues that its policy has a clear and unambiguous in-water exclusion whereby bodily injury and death of any person in the water or arising as a consequence of being in the water is



excluded from coverage. Therefore, Travelers had no duty to defend or indemnity any insureds under the Travelers' Policy, including Douglas Barkley. Lloyd's, on the other hand, argues that Traveler's policy is ambiguous and illusory and, thus, coverage must be construed in favor of Lloyd's (as Barkley's assignee).

There are other issues at play, as well, including Lloyd's failure to defend and indemnify Salt 'N Blue under its policy. While Lloyd's protests that Travelers abandoned Barkley, Lloyd's offers no valid explanation for why they abandoned Salt 'N Blue. Also, Lloyd's gives no excuse for its failure to advise its insured, Salt 'N Blue, or Travelers about the August 2015 policy-limit demand made upon the Lloyd's policy. In any event, at the end of the day, it seems as though this declaratory action is just about Lloyd's trying to recover some of the money they voluntarily spent to settle the Underlying Litigation (and, in part, in order to avoid a potential bad faith suit)[1] in October 2016 in addition to the admitted coverage under their own policy.

Lloyd's believes their voluntary payment and abandonment of a pending summary judgment motion they filed in the Underlying Litigation entitles them to get some of the money back. They are mistaken, however, because the in-water exclusion in the Travelers policy is neither ambiguous nor illusory. It is plain on its face and excludes Mr. Grosso's drowning from coverage under the policy. Accordingly, this Court should enter summary judgment in Travelers favor.

**STATEMENT OF UNDISPUTED MATERIAL FACTS ADMITTED BY LLOYD'S**

Lloyd's did not submit a statement of materials facts in opposition to Travelers' Statement of Undisputed Material Facts. *See* D.E. 107. Accordingly, all materials facts set forth in Travelers' statement are deemed admitted. S.D. L. R. 56.1(b).

Notwithstanding Lloyd's admissions, Travelers is compelled to address several factual claims in Lloyd's response which are not otherwise addressed in Travelers' motion for summary judgment or its response in opposition to Lloyd's motion for summary judgment.

First, Lloyd's suggestion that Travelers' completely abandoned Mr. Barkley is a mischaracterization of the facts. Importantly, in situations like this case where both a diving professional liability policy (i.e. the Lloyd's policy) and a commercial marine policy pertaining to a dive boat (i.e. the Travelers' policy) are at issue, the custom in the industry is not to

[1] *See* Deposition of Lloyd's Corporate Representative, Benjamin Joplin, 96:25 – 98:24 (admitting a potential bad faith claim was a consideration in settling for policy limits in October 2016). Pertinent portions of Lloyd's Corpreate Representative's deposition are attached hereto as Exhibit 1.

exchange reciprocal demands for defenses and indemnity. D.E. 114-8, Deposition of David Pope, 87:8-88:17 ("very rare" for professional policy to demand defense and indemnity from diveboat policy). Notwithstanding, Travelers accepted the defense of Mr. Barkley subject to the same terms, conditions, and reservations of rights as the other insureds only nine days after Mr. Barkley demanded a defense and indemnity. *See* Travelers' Statement of Undisputed Material Facts, D.E. 94, ¶¶15 – 16. This is more than can be said of Lloyd's, who never provided a defense or indemnity to its covered insured, Salt 'N Blue.

Next, although the underlying complaint alleges permission was given by a crewman of the Insured Vessel for decedent Grosso to return to the water without first checking for air [*see* D.E. 107, pg. 7], Mr. Barkley clearly testified that he checked Mr. Grosso's air supply before Mr. Grosso resubmerged. D.E. 94-1, 41:4-17.

Next, Lloyd's claims that "the Travelers' policy simply does not have a "physical situs" requirement within it." [D.E. 107, pg. 8]. In response, Travelers avers that the in-water exclusion is, in and of itself, a physical situs requirement. To be sure, if death occurs in the water, there is no coverage. [D.E. 94, ¶33]. Thus, the physical situs requirement for the exclusion is that the death occur in the water.

Third, to be clear, Travelers disputes Lloyd's conclusion that Mr. Grosso's drowning "occurred as a proximate result of ownership and/or operation of the charter scuba vessel in negligently operating the vessel by abandoning the dive site and leaving Joseph Grosso alone in the water, without a dive buddy." [D.E. 107, pg. 8-9]. This assertion defies logic. Owning or operating the vessel away from Mr. Grosso in the water did not cause him to drown. Rather, Mr. Grosso drowned, at least according to the Underlying Complaint, because he got tangled in the dive flag line while underwater. [D.E.19-1, ¶25 ("…this was the line that eventually [Grosso] became entangled in that led to his drowning.")].[2]

**REPLY MEMORANDUM OF LAW**

**I. Travelers' In-Water Exclusion is neither ambiguous nor illusory and should be enforced according to its plain meaning.**

"In determining whether an ambiguity exists, [the court is] to assess first the natural or plain meaning of the policy language in dispute." *City of Delray Beach, Fla. v. Agriculture Ins.*

[2] That said, Mr. Barkley's testimony in the Underlying Litigation was clear that he did not throw Mr. Grosso the line which he ultimately became entangled in. *See* D.E. 114-1, 54:18 – 56:17 (no buoy was thrown to Grosso as there was already a line in the water). .

*Co.*, 85 F.3d 1527, 1531 (11th Cir. 1996). Travelers avers that the plain meaning of the in-water exclusion is clear an unambiguous. Thus, respectfully, this concludes the Court's legal analysis.

However, to the extent that the Court finds that the Travelers' Policy language is not clear, which Travelers' expressly denies, Travelers avers that its policy is neither ambiguous nor illusory. Travelers' opposition to Lloyd's claim that the policy is ambiguous and illusory has been briefed in detail in Travelers response in opposition to Lloyd's motion for summary judgment [D.E. 113-1, pgs. 8 – 18], which Travelers' expressly incorporates by reference herein.

**II. Lloyd's reliance on extrinsic evidence is improper because the Travelers' in-water exclusion is clear and unambiguous.**

As pointed out by Lloyd's, "[u]nder Florida law, if the relevant insurance policy language is clear and unambiguous, a court must infer the parties' intent from its plain language, not from extrinsic evidence." D.E. 107, pg. 6, citing *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). To be sure, "[b]efore any extrinsic evidence – such as [Mr. Heinze's affidavit] – may be used, it is first appropriate for the district court to interpret the contract to determine whether any ambiguities exist as to coverage as a matter of law." *Nova Cas. Co. v. Waserstein*, 2005 WL 5955694 (S.D. Fla. 2005) (citing *City of Delray*, 85 F.3d at 1531). The in-water exclusion in the Diveboat Limitation Endorsement is clear and not capable of more than one meaning.

**III. Lloyd's Expert Affidavit is improper and should not be relied upon.**

The district court serves as the gatekeeper to the admission of expert testimony by ensuring that "speculative, unreliable expert testimony" does not reach the trier of fact.[3] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Rink v. Cheminova, Inc*., 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvery v. Baxter Healthcare Corp*., 298 F.3d 1253, 1256 (11th Cir. 2002)). Relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *see also Daubert*, 509 U.S. at 589.

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1306 (11th Cir. 1999). "Thus, the

[3] The instant case is proceeding under the Court's admiralty jurisdiction. Thus, the case is non-jury and the Court will be the trier of fact.

proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1372 (S.D. Fla. 2005).

Here, Bernd G. Heinze's affidavit offered [D.E. 107-3] by Barkley should be excluded because Lloyd's has not established that it meets any of the three prerequisites to admissibility. First, Heinze is not qualified to testify competently. For example, Heinze – who is not licensed to practice law in the state of Florida – improperly opines on "the application of Florida statutes and rules of civil procedure, including Florida Statute § 627.428." [D.E. 107-3, pg. 10]. Mr. Heinze also attempts to improperly offer his interpretation of Florida law throughout his affidavit.

Next, Lloyd's makes no offering as to Heinze's "methodology" in reaching his conclusions. Without providing any analysis or methodology, whatsoever, Heinze's opinions are nothing more than inadmissible subjective speculation masquerading as expert knowledge. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005). Indeed, Heinze's opinions are "precisely the kind of evidence that the trial judge must exclude in performing the gatekeeper function." *Chiovsky v. Ortho Pharm, Corp.*, 832 F. Supp. 341, 345 (S.D. Fla. 1993). It is an evidentiary requirement that expert opinion be connected to existing facts by something more than the "it is so because I say it is so" of the expert. *See Holesapple v. Barrett*, 5 Fed. Appx. 177 (4th Cir. 2001); *see also Masferrer*, 267 F.Supp.2d at 1372 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it."); *Slaughter v. Southern Talc. Co.*, 919 F.2d 304, 307 (5th Cir. 1990) ("[W]ithout more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible."). Importantly, if the analysis is deemed unreliable at <u>any step</u>, the expert's entire opinion must be excluded. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005) (emphasis added).

Finally, Heinze's affidavit will not assist the trier of fact – this Court. To be sure, this requirement cannot be met as a matter of law because "[t]he construction of a contract is a matter of law for the court, and expert legal opinion is not admissible under Fed.R.Evid. 702." *Coyote Portable Storage, LLC v. PODS Enters.*, 2011 WL 1870593, *3 (N.D. Ga. 2011) (citing

*Montgomery v. Aetna,* 898 F.2d 1537, 1541 (11th Cir. 1990) (reversing the district court for, *inter alia*, admitting expert testimony regarding an insurer's duties under an insurance policy)). As succinctly summarized by Judge Jordan:

> Indeed, the Eighth Circuit has held that construction of an insurance policy is a matter of law for the court, and "expert testimony on legal matters is not admissible." As the Sixth Circuit has cogently put it: "[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible."

*Nova*, 2005 WL 59555694 at *1 (refusing to admit expert testimony concerning the interpretation of a policy exclusion) (internal citations and quotations omitted).

Therefore, the analysis and determination of coverage under the Travelers' policy, including whether same is ambiguous or illusory, is a pure question of law within the exclusive province of the Court. *See Plantation Pipeline Co. v. Cont'l Cas. Co.*, 2008 WL 10884027 (N.D. Ga. 2008) (concluding that expert opinion regarding coverage under insurance policy is inadmissible as expert legal opinion). Because the construction of an insurance policy is a pure question of law for the court to decide, Heinze's affidavit must be excluded.

**IV. Travis Ochowicz was Travelers' Corporate Representative as to Underwriting Issues, Not as to Coverage Issues, and his testimony beyond the scope of the 30(b)(6) Notice for his Deposition Should be Stricken**

In addition to being improper extrinsic evidence which should not be considered given the plain language of the Travelers' policy, the testimony of Travis Ochowicz should not be considered by this Court because Mr. Ochowicz was improperly deposed on issues outside of the scope of his 30(b)(6) Notice of deposition.

Lloyd's deposed two of Travelers' Corporate Representatives in this litigation. The first Travelers' Corporate Representative was Mark Smieya, Claims Manager, who was deposed on issues pertaining to coverage. *See* Lloyd's 30(b)(6) Notice of Travelers' Corporate Representative (dated March 3, 2017) ("First 30(b)(6) Notice"), attached hereto as Exhibit 2. On March 21, 2017, Mr. Smieya appeared for his deposition as Travelers' Corporate Representative and testified regarding the noticed coverage-related issues. *See id.* Because he was presented as Travelers' corporate representative on coverage issues, Mr. Smieya deferred questioning on a number of topics related to underwriting, as follows:

| **Second Deposition Notice Issues:** | **Issues Addressed:** |
|---|---|
| a) Smieya Dep. 29:2-16 | The creation of Diveboat Limitation Endorsement |
| b) Smieya Dep. 30:1-7 | How long the Diveboat Limitation Endorsement existed |
| c) Smieya Dep. 31:7-25 | Change of charter lakes program to XL Insurance |
| d) Smieya Dep. 33:18-25 | The amount of underwriting premium generated by the Charter Lakes program |
| e) Smieya Dep. 49:7-15 | The negotiability of an insurance deductible between TRAVELERS and the insured |
| f) Smieya Dep. 51:11-15 | Authorship of exclusion k in TRAVELERS' policy |
| g) Smieya Dep. 52:8-53:25 | Use of Diveboat Limitation Endorsement by TRAVELERS |
| h) Smieya Dep. 119:12-120:14 | Design of dovetail insurance coverage between TRAVELERS' policy and a professional liability insurance policy |
| i) Smieya Dep. 133:21-25 | Revisions to exclusion k in TRAVELERS' policy |
| j) Smieya Dep. 134:1 | Substance of reservation of rights letter Travelers' issued on November 4, 2014 |
| k) Smieya Dep. 164:4-16 | Dive assure premier diving accident insurance plan |
| l) Smieya Dep. 271:1-9 | Information regarding TRAVELERS' internal loss runs |
| m) Smieya Dep. 273:15-23 | Travis Ochowicz's management, if any, of the Charter Lakes program regarding binding of policies |

*See* Deposition of M. Smieya, 29:2-16; 30:1-7; 31:7-25; 33:18-25; 49:7-15; 51:11-15; 52:8-53:25; 119:12-120:14; 133:21-25; 134:1; 164:4-16; 271:1-9; and 273:15-23. Pertinent portions of Mr. Smieya's deposition transcript are attached hereto as Exhibit 3. Ultimately, Mr. Smieya was produced as Travelers' Corporate Representative on coverage issues and testified accordingly, including providing responses to hypotheticals posed by Lloyd's counsel. *See* Ex. 2, Depo. of M. Smieya at 253:4-257:6.

Subsequently, Lloyd's sought a second Corporate Representative deposition in order to inquire about underwriting issues. *See* Lloyd's 30(b)(6) Notice of Travelers' Corporate Representative (dated May 10, 2017) ("Second 30(b)(6) Notice"), attached hereto as Exhibit 4. On or about May 31, 2017, Travis Ochowicz, the Managing Director of Travelers' Chicago Ocean Marine office, was presented to testify as Travelers' Corporate Representative on underwriting issues pursuant to Lloyd's Second 30(b)96) Notice. *Id.*

Although the Second 30(b)(6) Notice contained areas of inquiry related to underwriting and none related to coverage, Lloyd's counsel, questioned Mr. Ochowicz extensively on issues relating to coverage. Indeed, apparently unhappy with Mr. Smieya's responses, Lloyd's counsel

asked repeated questions to Mr. Ochowicz regarding coverage, including multiple hypothetical scenarios that may or may not bring a claim within coverage, and the application of coverage under those hypothetical facts. Deposition of T. Ochowicz, at 137:14 – 141:19; 143:24 – 151:3; 166:24 – 174:16. Pertinent portions of Mr. Ochowicz's deposition are attached hereto as Exhibit 5. These areas of inquiry were not designated subjects included in Mr. Ochowicz's deposition notice, nor were they incorporated by reference at the deposition subjects noted at Mr. Smieya's deposition. *See* Ex. 2 and 3.

As a matter of law, areas of inquiry not included in a corporate representative deposition notice are subject to exclusion, and they are not admissible as answers binding the corporation. *McLellan Highway Corp. v. United States*, 95 F. Supp. 2d 1 (D. Mass. 2000); *see also McMahon v. Presidential Airways Inc.*, 2006 WL 5359797, at *4, n.2 (M.D. Fla. 2006) ("Of course the deponent may object on the record that questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party"). In *McLellan*, the corporate representative explained that he was the defending party's designee for Topics D and E of the noticed areas, but not for Topics A, B or C. *Id.* at 9-10. Nonetheless, that corporate representative was questioned on topics that that were outside the areas of inquiry for which the defending party produced him. *Id.* Upon a motion by the defending party to limit the corporate representative's testimony to the noticed issues, the court excluded the testimony of the defending party's corporate representative where that corporate representative testified to matters outside of the designated areas of inquiry pertaining to him. *Id.* The court held that the corporate representative "was not presented to testify knowledgeably" for the corporation on the topics he was questioned, and therefore, he did not have personal or corporate knowledge on those topics. *Id.* at 10. The court, therefore, struck portions of the corporate representative's testimony from the record. *Id.*

In this case, Mr. Ochowicz was questioned on coverage issues under the Travelers' Policy, in regards to hypothetical facts that may or may not bring a claim within coverage, and application of coverage under those hypothetical facts. *See* Ex. 4, Depo. of T. Ochowicz, at 137:14 – 141:19; 143:24 – 151:3; 166:24 – 174:16. Although Lloyd's previously had the opportunity to depose Travelers' Corporate Representative on coverage issues, Mr. Smieya, Lloyd's counsel questioned Mr. Ochowicz, as Travelers' Second Corporate Representative on underwriting issues, on coverage issues well beyond the scope of the designated areas of inquiry

for which he was noticed, *see* Ex. 3, and on subject areas that Travelers' had already provided Mr. Smieya for testimony in response to LLOYD'S first notice to Travelers for a Corporate Representative's deposition, *see* Ex. 1. To be sure, Mr. Ochowicz "was not presented to testify knowledgably" on Travelers' behalf on those unnoticed topics, such as coverage issues. *See McLellan*, *supra*. Travelers' counsel properly made a timely and continuing objection to these issues, and instructed the witness to answer the questions he was asked by Lloyd's counsel to the best of his knowledge, while informing LLOYD'S counsel that the witness' answers were not Travelers' answers. *See* Ex. 4, Depo. of T. Ochowicz, at 137:14 – 141:19; 143:24 – 151:3; 166:24 – 174:16.[4]

While a court in this district previously held in *King v. Pratt*, 161 F.R.D. 475 (S.D. Fla. 1995) that if a deponent has personal knowledge on topics outside the designated areas of inquiry, he may answer because 30(b)(6) does not "confer some special privilege on a corporate representative," *id.* at 476, *King* is distinguishable from the situation presented in this case. While the *King* court did say that an examiner may ask questions outside the 30(b)(6) notice, the court said in the same sentence that the "general deposition rules govern". *Id.* Therefore, general deposition objections, such as lack of personal knowledge would be applicable to make that corporate representative's testimony inadmissible at trial or in a summary judgment motion, if properly objected to, as was the case here. *See* footnote 2, *supra*; *see also* Ex. 4, Deposition of T. Ochowicz, at 137:14 – 141:19; 143:24 – 151:3; 166:24 – 174:16.[5]

Accordingly, this Court should not reward Lloyd's for its improper second bite of the apple by entertaining Mr. Ochowicz's testimony on coverage issues. To be sure, Mr. Ochowicz was neither presented nor prepared to provide binding testimony on behalf of Travelers as to coverage issues nor respond to hypotheticals about coverage. As such, this Court should strike

---

[4] TRAVELERS' counsel, Michael E. Conroy, Esq., made both a continuing objection to Lloyd's counsel's questioning of Travis Ochowicz that fell outside the noticed areas of his deposition, and objections to form, which encompass the objection pertaining to lack of foundation, personal knowledge, facts not in evidence and speculation. *See NGM Ins. Co. v. Walker Const. & Dev., LLC,* 2012 WL 6553272, at *2 (E.D. Tenn. 2012) (explaining that objections to the form of the question "includes leading questions, lack of foundation, assuming facts not in evidence, mischaracterization or misleading question, non-responsive answer, lack of personal knowledge, testimony by counsel, speculation, asked and answered, argumentative question, and witness' answers that were beyond the scope of the question").

[5] This is true even though Mr. Ochowicz answered questions posed by LLOYD'S counsel that were outside the scope of his designated area of inquiry, because, in fact, he *had to* answer those questions at his deposition. *See New World Network Ltd. v. M/V NORWEGIAN SEA*, 2007 WL 1068124, at *4 (S.D. Fla. 2007) ("A corporate representative must answer any question posed at the deposition, whether deemed irrelevant or not"). Thus, the proper procedure is to allow the witness to respond, subject to an objection (as occurred here), and subsequently seek the court's assistance in limiting the use of the testimony.

any references in Lloyd's pleadings to Mr. Ochowicz's testimony on coverage issues because such issues were beyond the scope of Lloyd's Second 30(b)(6) Notice. In any event, such Mr. Ochowicz's testimony is extrinsic evidence which need not be considered given the plan language of the Travelers' Policy is clear and unambiguous.

**CONCLUSION**

Travelers is entitled to summary judgment in its favor because under the plain language of the Travelers' policy, there is no coverage for the drowning incident alleged in the Underlying Litigation because it was not "a result of the ownership, operation, or maintenance of the insured vessel." To be sure, Mr. Grosso drowned because he became entangled in a dive line under water. Notwithstanding, the in-water exclusion provides a second, independent basis for excluding coverage under the facts of the Underlying Litigation. Indeed, in-water exclusion in the Diveboat Limitation Endorsement is clear and unambiguous on its face – deaths in the water are excluded. The language pertaining to "loss of life… while in the water or arising as a consequence of being in the water" could not be more clear on its face. Accordingly, construing the Travelers policy according to its plain meaning, as the law requires, results in only one outcome: no coverage. To be sure, just as Lloyd's reliance on extrinsic evidence must rejected, so too must Lloyd's arguments that the Travelers' policy is ambiguous and illusory. The fact that Lloyd's has imagined irrelevant hypotheticals unrelated to the facts of this case does not render Travelers' policy ambiguous or illusory. Without doubt, the plain meaning of the Travelers policy to exclude coverage under the circumstances of this case is evident as a matter of law. Travelers' motion for summary judgment should be granted.

**WHEREFORE**, Travelers' respectfully prays for a judicial declaration that there is no coverage under the Travelers' policy for the deaths of persons who were not on board the vessel, but rather, were in the water, at the time of their injury or death, and consequently that Plaintiff Travelers had no duty to defend Defendant Barkley/Lloyd's, Salt 'N Blue, or any other insured under the Travelers' Policy in the Underlying Litigation and, further, had no duty to indemnify from any third party claims in the Underlying Litigation. Travelers further requests this Court hold that Lloyd's owed Salt 'N Blue a duty to defend and indemnify under the Lloyd's Policy, and, therefore, enter an order requiring Defendant Barkley/Lloyd's to reimburse Travelers for the costs and expenses incurred by Travelers in the defense of Salt 'N Blue in the Underlying Litigation in addition to any further relief as this Court deems just and equitable.

**CERTIFICATE OF SERVICE**

We certify that on June 30, 2017 we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

**RESPECTFULLY SUBMITTED,**

**McAlpin Conroy, P.A.**
*Counsel for Plaintiff Travelers*
Brickell City Tower
80 SW 8th Street, Suite 2805
Miami, Florida 33130
Telephone: (305) 810-5400
Facsimile: (305) 810-5401

By: */s/ Kassandra Doyle Taylor*
Michael E. Conroy, Esq.
FL Bar No.: 845434
mconroy@mcalpinconroy.com
bvelasquez@mcalpinconroy.com
Kassandra Doyle Taylor, Esq.
FL Bar No.: 68645
ktaylor@mcalpinconroy.com

**SERVICE LIST**

Case No: 16-61768-CIV-ALTONAGA/O'Sullivan

Douglas M. McIntosh
dmcintosh@mscesq.com
Ilana B. Olman
iolman@mscesq.com
*Attorneys for Defendant/Counter-Plaintiff, Douglas Barkley, for the use and benefit of Certain Underwriters at Lloyd's London*
McIntosh, Sawran & Cartaya, P.A.
1776 East Sunrise Boulevard
P.O. Box 7990
Ft. Lauderdale, FL 33338-7990
Telephone: (954) 765-1001
Facsimile: (954) 765-1005