UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61768-CIV-ALTONAGA/O'Sullivan

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

    Plaintiff,
v.

DOUGLAS BARKLEY,

    Defendant.
_____/

## **ORDER**

**THIS CAUSE** came before the Court on Plaintiff, Travelers Property Casualty Company of America's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 94] and Defendant, Douglas Barkley's Motion for Final Summary Judgment, ("Defendant's Motion") [ECF No. 95], both filed May 30, 2017. The Court has carefully considered the parties' written submissions,[1] the record, and applicable law.

### **I.    BACKGROUND**

This is a maritime insurance action. Plaintiff seeks a declaration it was not obligated to provide a legal defense to Defendant in a now-settled wrongful death action. (*See* Am. Compl.

---

[1] Defendant filed a Response ("Defendant's Response") [ECF No. 107] to Plaintiff's Motion, to which Plaintiff filed a Reply ("Plaintiff's Reply") [ECF No. 119]. Plaintiff filed a Response ("Plaintiff's Response") [ECF No. 108] to Defendant's Motion, to which Defendant filed a Reply ("Defendant's Reply") [ECF No. 117]. The submissions also include Plaintiff's Statement of Undisputed Material Facts ("Plaintiff's SMF"), submitted as part of its Motion (*see* Pl.'s Mot. 4–12); Defendant's Statement of Material Undisputed Facts ("Defendant's SMF"), submitted as part of his Motion (*see* Def.'s Mot. 2–8); Plaintiff's Responsive Statement to [Defendant's] Alleged Undisputed Material Facts ("Plaintiff's SMF Response"), submitted as part of its Response (*see* Pl.'s Resp. 1–8); Plaintiff's Amended Complaint [ECF No. 19]; Defendant's Answer and Affirmative Defenses . . . and Counterclaim ("Defendant's Answer" and "Counterclaim") [ECF No. 48]; and Plaintiff's Answer and Affirmative Defenses to [Defendant's] Counterclaim ("Plaintiff's Affirmative Defenses") [ECF No. 59].

¶¶ 29–30; Order of Dismissal with Prejudice [ECF No. 95-4]). For his part, Defendant requests a declaration Plaintiff had a duty to defend and indemnify him and his assignee — certain underwriters at Lloyd's, Syndicate 4420, Ark Underwriting, Inc. ("Lloyd's") — against the claims in the underlying wrongful death action, and reimburse Lloyd's for Plaintiff's pro rata share, or 50 percent, of Lloyd's out of pocket costs incurred in Barkley's defense, including attorney's fees. (*See* Countercl. ¶¶ 5–6).[2]

On July 30, 2014 Joseph Grosso was transported on the *M/V Scubatyme III* (the "Vessel") to a dive location off Pompano Beach, Florida. (*See* Def.'s SMF ¶ 1; Pl.'s SMF Resp. ¶ 1; Am. Compl. ¶ 12; Def.'s Answer ¶ 12). Salt 'N Blue, LLC owned the Vessel (*see* Def.'s SMF ¶ 2; Am. Compl. ¶ 6), which was operated by its captain Robert Wranovics, and Barkley, a mate and deckhand responsible for supervising the passengers in relation to activities conducted aboard the boat (*see* Def.'s SMF ¶¶ 4–5; Pl.'s SMF Resp. ¶¶ 4–5; Am. Compl. ¶ 12; Def.'s Answer ¶ 12).[3]

Grosso embarked on this excursion to scuba dive, accompanied by his brother. (*See* Pl.'s SMF ¶ 3; Def.'s SMF ¶¶ 1, 6). After their dive, both returned to the Vessel. (*See* Pl.'s SMF ¶¶ 3–4; Def.'s SMF ¶ 7; Pl.'s SMF Resp. ¶ 7). Grosso, however, re-descended for another dive after expressing his intent to retrieve a lobster. (*See* Pl.'s SMF ¶ 5; Def.'s SMF ¶ 7). During Grosso's second dive, Wranovics steered the Vessel away from Grosso to pick up other divers. (*See* Pl.'s SMF ¶ 6; Def.'s SMF ¶ 9; Am. Compl. ¶ 18; Def.'s Answer ¶ 18). Upon the Vessel's return, Grosso was found without his regulator and unresponsive, approximately 15 feet below the surface, tangled in the dive flag line. (*See* Pl.'s SMF ¶ 7; Def.'s SMF ¶ 10; Pl.'s SMF Resp.

---

[2] Barkley's claim is brought "for the use and benefit of [Lloyd's]." (Countercl. 10 (alteration added)).

[3] Other Defendants to the Amended Complaint, Salt 'N Blue; Wranovics; and the judicially appointed representatives of Grosso's estate, Glenn J. Grosso and Dineen M. Franchina, were dropped as parties in this matter on February 13, 2017. (*See* February 13 Order [ECF No. 69] 1–2). The case has since proceeded between Travelers and Barkley only.

¶ 10; Am. Compl. ¶ 19; Def.'s Answer ¶ 19). Resuscitation efforts were unsuccessful. (*See* Pl.'s SMF ¶ 7; Am. Compl. ¶ 19; Def.'s Answer ¶ 19).

Defendant states a crew member, "[w]ithout checking or inquiring as to the amount of air remaining in . . . Grosso's tank," granted Grosso permission to conduct his second dive. (Def.'s SMF ¶ 8 (alterations added)). Plaintiff denies this assertion. (*See* Pl.'s SMF Resp. ¶ 8). The representatives of Grosso's estate filed a wrongful death action (the "Underlying Litigation") in Broward Circuit Court against Salt 'N Blue, Wranovics, and Barkley, alleging they breached their duty of care to Grosso by, among other actions, abandoning the dive site and leaving him to dive alone without a "dive buddy." (Pl.'s SMF ¶¶ 8–11; Def.'s SMF ¶¶ 13–14).

Barkley is named as an insured under a Lloyd's-issued Professional Liability Insurance Master Policy ("Lloyd's Policy") [ECF No. 94-5]. (*See* Pl.'s SMF ¶ 18; Def.'s SMF ¶ 18). Lloyd's provided a defense to Barkley in the Underlying Litigation pursuant to the Lloyd's Policy. (*See* Pl.'s SMF ¶ 24; Def.'s SMF ¶¶ 23–24; Pl.'s SMF Resp. ¶ 24).

Travelers issued a Commercial Marine Insurance Policy ("Travelers Policy") [ECF No. 94-6] to Salt 'N Blue, effective November 11, 2013 until November 11, 2014. (*See* Pl.'s SMF ¶¶ 27–28; Def.'s SMF ¶ 15). Among those covered by the Travelers Policy are "Additional Named Insured(s)," defined as "the Captain and designated crewmember(s)." (Travelers Policy 6). Defendant asserts, and Travelers does not dispute, Barkley is an "Additional Named Insured" under the Policy. (*See* Def.'s SMF ¶ 20; Def.'s Mot., Ex. C, Letter from Peter Alesi, AIC (Travelers) to Enzo Varalla (Salt 'N Blue) [ECF No. 95-3] 6[4] ("Mr. Barkley is qualified as an additional named insured under the Policy for this incident.")).

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

3

The Travelers Policy states Travelers "will pay sums that . . . a covered person under this policy become[s] legally obligated to pay as a result of the ownership, operation or maintenance of the insured vessel because of . . . bodily injury or loss of life." (Travelers Policy 10 (alterations added)). But the Travelers Policy also includes a Diveboat Limitation Endorsement, excluding from coverage "[b]odily injury, loss of life, or illness of any person while in the water or arising as a consequence of being in the water." (*Id.* 21 (alteration added)).

On September 26, 2016, counsel for Barkley in the Underlying Litigation sent an email letter to counsel for Travelers demanding "Travelers immediately provide a defense to Mr. Barkley" because he is "entitled to defense and indemnity under the [Travelers] policy." (Def.'s Mot., Ex. B, Letter from James Hurley to Michael Conroy [ECF No. 95-2] 1–2 (alteration added); *see also* Def.'s SMF ¶ 26; Pl.'s SMF Resp. ¶ 26). On October 5, 2016, Travelers conditionally accepted the defense of Barkley while reserving its rights to withdraw its defense based on any applicable Policy exclusions. (*See* Letter from Alesi to Varalla 6–7; Def.'s SMF ¶ 27; Pl.'s SMF Resp. ¶ 22). The parties in the Underlying Litigation reached a settlement, and the case was dismissed with prejudice on November 14, 2016. (*See* Order of Dismissal with Prejudice).

Defendant claims Travelers "never contributed toward costs and expenses incurred in the defense of [Barkley] in the [Underlying Litigation], nor did [Travelers] reimburse [Lloyd's] for its pro rata share of defense fees and costs incurred in the defense of [Barkley] in the [Underlying Litigation]." (Def.'s SMF ¶ 28 (alterations added)). Travelers "refused to participate in the funding needed for settlement of the claims . . . on a pro rata basis with [Lloyd's]" in the Underlying Litigation. (*Id.* ¶ 30 (alterations added)). Defendant requests the Court enter summary judgment requiring Travelers to reimburse Lloyd's 50 percent of costs

4

incurred in the Underlying Litigation; attorney's fees for the present action; and any other relief the Court deems just and proper. (*See* Def.'s Mot. 20).

Travelers insists reimbursement is unwarranted because Grosso's drowning death is not an event covered by the Travelers Policy. (*See* Pl.'s Resp. 8–16). Travelers moves for summary judgment, seeking a judicial declaration the Travelers Policy did not require it to provide Barkley with a defense in the Underlying Litigation. (*See* Pl.'s Mot. 19). In its Motion, Travelers also requests the Court require Lloyd's to reimburse Travelers for its defense of Salt 'N Blue in the Underlying Litigation (*see id.*), because "[t]he Lloyd's Policy provided coverage for [Salt 'N Blue] as an Additional Insured" (Pl.'s SMF ¶ 25 (alterations added)), but the cost of Salt 'N Blue's defense was "incurred solely by Travelers" (Pl.'s Mot. 18).

## II. LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)). If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481-UU, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). The court cannot weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citation omitted). And even when the facts are undisputed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the [c]ourt should deny summary judgment." *Whelan*, 2013 WL 5583970, at *2 (alterations added; citation omitted).

"In a case involving contract interpretation, summary judgment is appropriate 'when the agreement is totally unambiguous, or when any ambiguity may be resolved by applying the rules of construction to situations in which the parol evidence of the parties' intentions is undisputed or non-existent.'" *Dew Seven, L.L.C. v. Big Lots Stores, Inc.*, 354 F. App'x 415, 416 (11th Cir. 2009) (per curiam) (quoting *Land O'Sun Realty v. REWJB Gas Invs.*, 685 So. 2d 870, 872 n.3 (Fla. 3d DCA 1996)).

## III.  ANALYSIS

### A.  The Travelers Policy and the Parties' Competing Positions

The parties agree the Travelers Policy is governed by Florida law, as it was issued and delivered to Salt 'N Blue in Florida. (*See* Pl.'s Mot. 13; Def.'s Mot. 9). "Under Florida law, '[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage.'" *Singer v. Colony Ins. Co.*, 147 F. Supp. 3d 1369, 1375 (S.D. Fla. 2015) (alteration in original) (quoting *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)).

As mentioned, the Travelers Policy obligates Travelers to "pay sums that . . . a covered person under this policy become[s] legally obligated to pay as a result of the ownership, operation or maintenance of the insured vessel because of . . . bodily injury or loss of life." (Travelers Policy 10 (alterations added)). The Policy's Diveboat Limitation Endorsement excludes coverage for "[b]odily injury, loss of life, or illness of any person while in the water or arising as a consequence of being in the water." (*Id.* 21 (alteration added)).

While the parties do not dispute Barkley is a covered person under the Travelers Policy (*see* Def.'s SMF ¶ 20; Letter from Alesi to Varalla 6), Travelers argues its Policy does not cover Grosso's drowning death because it was not "a result of the . . . operation . . . of the insured vessel" (Pl.'s Mot. 13 (alterations added; emphasis omitted) (quoting Travelers Policy 10)), and because it is subject to the Diveboat Limitation Endorsement given Grosso's loss of life occurred in the water and as a consequence of being in the water (*see id.* 14–18). According to Barkley, Grosso's death occurred as a result of the operation of the Vessel because the Vessel delivered Grosso to the dive location and then steered away from Grosso to collect the remaining divers while Grosso was still in the water; and Grosso was allegedly given permission for his fatal second dive while aboard the Vessel. (*See* Def.'s Mot. 10–12 (citing Underlying Litigation Complaint [ECF No. 19-1] ¶¶ 35(c), 45(c), 55(c), 66(c), 76(c), 87(c)); Def.'s Resp. 6–9). Barkley further contends the Diveboat Limitation Endorsement must be disregarded because it is ambiguous and illusory, and Travelers, through its actions, confessed liability. (*See* Def.'s Mot. 12–18; Def.'s Resp. 9–13).

### 1. Loss of Life "As a Result of" Operation of the Vessel

The Travelers Policy does not define what it means for loss of life to occur "as a result of" operation of the Vessel. Travelers cites *Race v. Nationwide Mutual Fire Insurance Co.*, 542

So. 2d 347 (Fla. 1989), as establishing a three-part test in the motor vehicle context to determine whether injuries "arise out of" the ownership, maintenance, or use of a vehicle:

> (1) The accident must have arisen out of the inherent nature of the automobile, as such; (2) The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; and (3) The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.

(Pl.'s Mot. 14 (quoting *Race*, 542 So. 2d at 349)). Travelers asserts because the Vessel was not even the physical situs of Grosso's death, it could not have occurred "as a result of" operation of the Vessel. (*See id.*).

Since *Race*, the Florida Supreme Court has instructed:

> The term "arising out of" is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or 'having a connection with. . . . [T]his requires more than a mere coincidence between the conduct . . . and the injury. It requires some causal connection, or relationship. . . . But it does not require proximate cause.

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539–40 (Fla. 2005) (alterations added; internal quotation marks and citations omitted). "[P]ost-*Taurus*[,] Florida courts have applied a more expansive interpretation of the term 'arising out of[.']" *Elizabeth Arden Resort Spas, Inc. v. Bonaventure Hotel Assocs., Ltd.*, No. 12-61850-CIV, 2014 WL 11531885, at *7 (S.D. Fla. Nov. 13, 2014) (alterations added; citations omitted); *see also N.H. Ins. Co. v. Champion*, No. 6:12-CV-1832-ORL-22GJK, 2013 WL 12156445, at *6 (M.D. Fla. Nov. 25, 2013) (concluding Florida law provides "no basis for limiting causation to the narrow *Race* three-factor test").

While Travelers urges "the broader meaning attributed to 'arising out of' . . . cannot be applied to the Travelers[] [P]olicy, whose express language requires the death to be 'a result of' the ownership or operation of the insured vessel" (Pl.'s Resp. 10 (alterations added)), Florida

courts regard "arising" and "resulting" to be synonyms in this context, *see Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 657 So. 2d 925, 927 (Fla. 1st DCA 1995) (finding no "substantive distinction" between an insurance policy obligating payment where bodily injury is caused by an "accident resulting from the ownership, maintenance, or use of" the insured vehicle, and the language "found in most automobile policies" providing for payment where bodily injury is suffered from an accident "arising out of the ownership, maintenance or use of" an insured vehicle (citation omitted)); *see also Champion*, 2013 WL 12156445, at *6 ("[T]he terms are similar enough that case law for one is applicable to the other." (alteration added; citation omitted)).

Grosso's death occurred "as a result" of the operation of the Vessel if his death originated from, grew out of, flowed from, was incident to, or had a connection with operation of the Vessel – constituting more than a mere coincidence. *See Taurus*, 913 So. 2d at 539; *Champion*, 2013 WL 12156445, at *6. As a preliminary matter, even taking as true the disputed fact Grosso was negligently given permission by a crew member to do a second dive (*see* Def.'s SMF ¶ 8; Pl.'s SMF Resp. ¶ 8), this act had no connection to the operation of the Vessel beyond the mere coincidence it may have occurred while Grosso was present on the Vessel,[5] *see Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, No. 11-80272-CIV, 2012 WL 87107, at *4 (S.D. Fla. Jan. 11, 2012) ("The mere fact that a vehicle is the site of an injury or incident is insufficient to create a connection between the use of the vehicle and the injury so as to bring the injury within coverage by an automobile policy." (citation omitted)). Defendant's claim thus survives only if

---

[5] Defendant does not assert in his Statement of Material Undisputed Facts Grosso was on the Vessel when given the instruction (*see* Def.'s SMF ¶ 8), but merely points out in his Motion the plaintiffs in the Underlying Litigation alleged this fact in their complaint (*see* Def.'s Mot. 11 (citing Underlying Complaint ¶¶ 35(c), 45(c), 55(c), 66(c), 76(c), 87(c)). The Court need not accept the allegations made in the Underlying Complaint as true to determine whether the Plaintiff in this action is entitled to summary judgment.

Grosso's death could be said to have occurred "as a result of" the Vessel transporting him to the dive location and motoring away from him to collect other divers.

The Court is not aware of any Florida case dealing with this precise factual scenario. Grosso's drowning death certainly "flow[ed] from" or "originat[ed] from" operation of the Vessel, *Taurus*, 913 So. 2d at 539, in that the Vessel transported Grosso to the location of his dive (*see* Pl.'s SMF ¶ 1; Def.'s SMF ¶ 1; Pl.'s SMF Resp. ¶ 1; Am. Compl. ¶ 12; Def.'s Answer ¶ 12). But courts have not read *Taurus* to mean so long as operation of a vehicle is a but-for cause of the injury, the injury arises out of the operation of the vehicle, no matter how tenuous the connection between operation of the vehicle and the injury. For instance, in *Boatright v. State Farm Mutual Automobile Insurance Company*, the court, applying the *Taurus* standard, held a pedestrian's injuries suffered from falling backwards when a dog jumped out of a parked vehicle did not arise out of operation of the vehicle. No. 309-CV-946-J-32MCR, 2010 WL 2220250, at *4 (M.D. Fla. June 2, 2010). Although both parties acknowledged the vehicle transported the dog to the location where it encountered the plaintiff, *see id.* at *1, the court found "[t]he connection between [the plaintiff's] injuries and the motor vehicle was 'too tenuous,' the dog's connection to the vehicle was just 'mere coincidence,' and the car trip was over at the time of the accident," *id.* at *4 (alterations added).

*Boatright*'s facts are not perfectly analogous to this case. The connection between Grosso's injury and his being transported on the Vessel is far from "mere coincidence"; Grosso boarded the Vessel with the intention to scuba dive. (*See* Am. Compl. ¶ 15 (noting Grosso signed a liability release regarding the risks of diving before boarding the vessel); Def.'s Answer ¶ 15 (admitted)). Moreover, the Vessel continued to be operated at the time Grosso drowned, as it was being used to retrieve other divers. (*See* Pl.'s SMF ¶ 6; Defs.' SMF ¶ 9; Am. Compl. ¶ 18;

Def.'s Answer ¶ 18). It was thus not just the transportation of Grosso to the dive location that was causally connected to Grosso's death; his death may have also been connected to the motoring of the Vessel away from his location. If Grosso's dive outcome would have been different with supervision, the Vessel's departure, which left him alone in the water, would be a contributing factor to his drowning death.

The undisputed facts do not definitively instruct the Court one way or another whether Grosso's death was causally related to his abandonment. The "as a result" clause, by itself, does not entitle either party to summary judgment.

### 2. The Diveboat Limitation Endorsement

Travelers next argues "[e]ven assuming *arguendo*, that the drowning was a result of the operation of the vessel, coverage is still not available to Barkley because the allegations in the Underlying Litigation fall within the exclusion in the Travelers[] Policy for the loss of life to persons while in the water." (Pl.'s Resp. 12 (alterations added)).

The Diveboat Limitation Endorsement excludes coverage for loss of life occurring "while in the water or arising as a consequence of being in the water." (Travelers Policy 21). This exclusion plainly applies to Grosso's drowning death. Defendant makes three arguments as to why the Court should nonetheless ignore the plain language of the Diveboat Limitation Endorsement and declare Grosso's death covered by the Travelers Policy. The Court addresses each argument in turn.

First, Defendant argues the Diveboat Limitation Endorsement should not be enforced because it is so overbroad it renders the Travelers Policy illusory. (*See* Def.'s Mot. 12–15; Def.'s Resp. 12–13). "[W]hen an exclusion or limitation to an insurance policy 'swallow[s] up the insuring provision' it 'creat[es] the grossest form of ambiguity'" and must be construed "in

favor of coverage." *Zucker for BankUnited F. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017) (first alteration added) (quoting *Purelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997); and then citing *Taurus*, 913 So. 2d at 532). Defendant argues the Diveboat Limitation Endorsement, like the exclusion in *Purelli*, "completely swallows up" the Travelers Policy's coverage for bodily injury and death as a result of negligent operation of the Vessel. (Def.'s Mot. 13). Defendant is mistaken.

The insurance policy in *Purelli* "purport[ed] to insure invasion of privacy, an intentional tort, but exclude[] acts 'intended' by the insured and limit[ed] coverage to 'accidents.'" 698 So.2d at 620 (alterations added). Hence, the exclusion completely swallowed up the coverage. Here, the Travelers Policy does not "'grant [a] right[] in one paragraph and then retract the very same right' in a later one." *Zucker*, 856 F.3d at 1352 (alterations in original) (quoting *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3d DCA 1990)). Instead, the Diveboat Limitation Endorsement merely excludes a "subset of claims that would ordinarily fall within the policy's insuring provisions." *Id.*

"In order for an exclusion to render a policy's coverage illusory it must eliminate all — or at least virtually all — coverage in a policy." *Id.* (citing *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 966–67 (11th Cir. 2014)). The Diveboat Limitation Endorsement would not apply to injuries or deaths occurring onboard the Vessel as a result of negligence in the Vessel's operation. Such claims are still covered by the Travelers Policy. Accordingly, the Travelers Policy is not illusory under Florida law. *See Interline Brands*, 749 F.3d at 967 (exclusion was not void for being against public policy where "[e]ven with the broad [e]xclusion, the policy still contains extensive coverage" (alterations added)).

Defendant's second argument against enforcing the Diveboat Limitation Endorsement is the Endorsement is ambiguous. (*See* Def.'s Mot. 15–17; Def.'s Resp. 10–12). Defendant notes the Travelers Policy initially contained an exclusion ("Exclusion K") which excluded coverage for "loss of life . . . arising from swimming, snorkeling, or scuba diving" but did not apply "to an occurrence as the result of man overboard or emergency services to the vessel." (Travelers Policy 10 (alteration added)). Defendant argues the replacement of Exclusion K with the Diveboat Limitation Endorsement "leaves unclear whether the policy would otherwise provide coverage for liability arising out of the operation of a scuba diving charter, resulting in the death of a passenger" and makes it "ambiguous that a crewmember . . . might not be insured if by their negligent operation of a vessel, a paying customer on a charter dive should be abandoned in the water and left to drown." (Def.'s Mot. 16 (alteration added)). The Court disagrees the Diveboat Limitation Endorsement is ambiguous as to these issues. It plainly excludes coverage for injuries and loss of life occurring in water. A drowning death while scuba diving is unambiguously excluded from coverage by the Diveboat Limitation Endorsement.

Defendant attempts to show ambiguity in the Diveboat Limitation Endorsement by pointing out inconsistencies between it and other endorsements in the Travelers Policy, such as the Divemaster Limitation Endorsement and the Captain and Crew Limitation Endorsement. (*See* Def.'s Mot. 16–17). But the Divemaster Limitation Endorsement only applies where the insured is obligated to pay sums because of "liability *to* a Certified Divemaster and/or Dive Instructor" (Travelers Policy 22 (emphasis added)), and the Captain and Crew Limitation Endorsement provides coverage for "liability *to crew* as defined in the Jones Act or under general Maritime Law" (*id.* 20 (emphasis added)). Barkley's liability was not to a Certified Divemaster, Dive Instructor, or any of the Vessel's crew; it was to Grosso. These endorsements

are not in any way relevant to the Underlying Litigation. Defendant cannot manufacture ambiguity in the Diveboat Limitation Endorsement by pointing to hypothetical scenarios in which provisions not relevant to this case would be inconsistent with the Diveboat Limitation Endorsement. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) ("If the *relevant* policy language is susceptible to more than one reasonable interpretation, one providing coverage and . . . another limiting coverage, the insurance policy is considered ambiguous." (alteration and emphasis added; citations omitted)).

The Court is also unpersuaded by Defendant's argument ambiguity exists because of "[Travelers's] own corporate representative's admission that the [Travelers] [P]olicy does provide coverage for in-the-water injuries and/or death" (Def.'s Reply 10 (alterations added; emphasis omitted) (citing Deposition of Travis Ochowicz [ECF No. 107-1] 149:19–151:3, 172:19–174:14)), made in response to hypothetical scenarios posed by Defendant's counsel. Where the plain language of an agreement is susceptible to only one interpretation, it is "unnecessary to analyze the unstated intentions of the parties or the purposes of the provision." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). As applied to the facts at issue here, the Diveboat Limitation Endorsement unambiguously excludes coverage.

Defendant's third argument for disregarding the Diveboat Limitation Endorsement is Travelers effectively confessed liability by providing a defense to Wranovics and Salt 'N Blue, belatedly accepting Barkley's defense, and paying a portion of the global settlement in the Underlying Litigation. (*See* Def.'s Mot. 17–18; Def.'s Resp. 9). These actions do not constitute confessions of liability given Travelers reserved its rights. (*See* Letter from Alesi to Varalla 6–7 ("[W]e have retained attorney Donna E. Albert and Associates, P.A. to represent SNB, the Captain and now Mr. Barkley in this case. However, if it is determined that the loss is excluded

by the Diveboat Limitation Endorsement, or any other part of the Policy, we reserve the right to withdraw our defense of SNB, the Captain and Mr. Barkley under the Policy." (alteration added))). "[A]n insurer defending its insured pursuant to a reservation of rights is permitted to settle a third-party claim within policy limits without confessing judgment as to coverage." *Roger Kennedy Constr., Inc. v. Amerisure Ins. Co.*, 506 F. Supp. 2d 1185, 1194 (M.D. Fla. 2007) (alteration added) (citing *Basik Exps. & Imps., Inc. v. Preferred Nat. Ins. Co.*, 911 So. 2d 291, 294 (Fla. 4th DCA 2005) (per curiam)).

Defendant relies on *Wollard v. Lloyd's & Companies of Lloyd's*, 439 So. 2d 217 (Fla. 1983), but *Wollard* is factually dissimilar to this case. In *Wollard*, an insurer settled a first-party claim brought against it by an insured, but the parties continued to litigate whether the insured should be awarded attorney's fees for the action. *See id.* at 218. The court held the settlement to be a confession of judgment providing a basis for an award of attorney's fees, reasoning "[r]equiring the plaintiff to continue litigation in spite of an acceptable offer of settlement merely to avoid having to offset attorney's fees against compensation for the loss puts an unnecessary burden on the judicial system, fails to protect any interest . . . and discourages any attempt at settlement." *Id.* (alterations added). Here, Travelers did not settle or abandon its first-party dispute with Barkley to avoid fees.

Defendant's reliance on *O'Malley v. Nationwide Mutual Fire Insurance Co.*, 890 So. 2d 1163 (Fla. 4th DCA 2004), is similarly flawed. While, like Travelers, the insurer in *O'Malley* defended the insured in a third-party tort action under a reservation of rights, once the underlying tort action settled, the insurer in *O'Malley* also voluntarily dismissed its declaratory judgment action against the insured. *See id.* at 1164. The court held "[w]hen [the insurer] dismissed the declaratory action, it was . . . the 'functional equivalent of a confession of judgment or a verdict

15

in favor of the insured' in the declaratory action." *Id.* (alterations added) (quoting *Wollard*, 439 So. 2d at 218). Travelers has not requested a dismissal of its declaratory judgment action against Barkley. It has not confessed judgment. *See Basik*, 911 So. 2d at 292–94.

None of Defendant's arguments provide grounds for the Court to disregard the plain language of the Diveboat Limitation Endorsement. As the Travelers Policy excludes coverage for Grosso's drowning death, Travelers had no duty to defend Barkley in the Underlying Litigation and is not obligated to reimburse Lloyd's for any costs incurred.

### B. Reimbursement for Travelers's Defense of Salt 'N Blue

Travelers requests the Court require Lloyd's reimburse Travelers for its defense of Salt 'N Blue in the Underlying Litigation. (*See* Pl.'s Mot. 18–19). However, Travelers did not plead entitlement to these sums, aside from an affirmative defense stating:

> [Travelers] alleges that if it is determined to be obligated to contribute to Lloyd's voluntary payment, then it is similarly entitled to an offset or credit for the costs and expenses which Lloyd's should have incurred for a proportionate share of the costs of defending Salt 'N Blue, LLC.

(Pl.'s Affirmative Defenses ¶ 7).

Travelers is not obligated to contribute to Lloyd's settlement payment, *see supra* § III.A.2, and consequently there is nothing to "offset." Travelers did not include a request for reimbursement in its Amended Complaint, nor did it even include Lloyd's as a defendant in the action. As Travelers's pleadings fail to mention the remedy it now seeks in its Motion, the Court cannot award that relief on summary judgment. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (where the plaintiff's complaint "provided no notice whatsoever that he believed he was entitled to" relief under a new claim, he "was not entitled to raise it in the midst of summary judgment" (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam))).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment **[ECF No. 94]** is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion for Final Summary Judgment **[ECF No. 95]** is **DENIED**. An order of final judgment shall be entered separately. The Clerk of Court is instructed the **CLOSE** the case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of August, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record